No. 86-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

DOUGLAS E. PHILLIPS,

       Claimant and Appellant,

   -vs-

SPECTRUM ENTERPRISES,  Employer,

    and

INTERMOUNTAIN INSURANCE COMPANY,

       Insurer, Defendant and
       Respondent,

---

APPEAL FROM:  The Workers' Compensation Court, The Honorable Timothy
                Reardon, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Morales & Volinkaty; Julio K. Morales, Missoula,
          Montana

     For Respondent:

          Garlington, Lohn & Robinson; Bradley J. Luck, Missoula,
          Montana

---

               Submitted on Briefs: Sept. 11, 1986

                   Decided: December 23, 1986

Filed: DEC 23 1986

_____
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Claimant appeals an order of the Workers' Compensation Court. Following a two day hearing, the court found he suffers from an occupational disease, he is not 100% disabled at this time and currently is not entitled to further benefits under § 39-72-703, MCA. He is not entitled to attorney's fees or to a 20% penalty. We affirm.

Claimant Douglas Phillips (Phillips) was employed by Spectrum Enterprises at the time of his alleged injury. Spectrum's electronics manufacturing process includes extensive soldering, painting, and conformal coating (application of plastic coating). Solder smoke, fumes and other airborne chemicals are produced in the work place.

Phillips worked for Spectrum as a mechanical technician from July, 1982, until May 6, 1983. He performed conformal coating, painting, cleaning, blue print reading, special tooling and soldering. Sometime between January and May, 1983, a can of solvent Phillips was opening splashed up onto his face. Several employees helped him wash the solvent off his face and moustache. He did not go to the doctor that day, a Friday, hoping that by doing some running over the weekend his system would be cleared. The date the solvent splashed onto his face has never been determined. The record shows, however, he saw his family physician, Dr. Ballhagen, May 3, 1983. Neither Dr. Ballhagen, nor Dr. Schimke, a pulmonary disease specialist who examined him a few days later, has any record Phillips told him about the splashing incident.

Phillips terminated his employment with Spectrum May 6. He executed a claim for compensation in his own hand, May 9, 1983, listing the date of injury as May 3, 1983. The basis

2

of his request for benefits was because he "[h]ad to stop work due to inhalation of solder smoke and chemical vapors." He executed another claim for compensation June 7, 1983, in which he said:

> I worked for a period of about one year for the company (Spectrum Enterprises). We did a lot of conformal coating and soldering in a building without proper ventilation. This caused my lung to hurt and I got dizzy to the point that I couldn't work any longer. I also had nose bleeds later on.

The Division of Workers' Compensation treated the claim as being under the Occupational Disease Act, and requested Dr. Schimke, a member of the Occupational Disease Medical Panel, to examine and report on Phillips' condition. Dr. Schimke had seen Phillips earlier as a referral from Dr. Ballhagen. Schimke's initial report to the Workers' Compensation Division stated:

> This bronchitis is in fact the result of his employment as a welder where he was exposed to nauseous chemicals which in this case resulted in bronchitis. The illness is due to the work environment where he was exposed to various chemical fumes and welding fumes.

The Division issued its order of determination August 3, 1983, indicating no party had requested a second medical examination. The Division found Phillips had an occupational disease and was entitled to benefits so long as he was totally disabled. No timely appeal was taken from this determination and Intermountain Insurance Company (Insurer), paid benefits for total disability on the claim through August 20, 1984. The benefits were discontinued on the basis of Dr. Schimke's letter of August 1, 1984, to the Division stating he did "not see any reason to continue [Phillips] on permanent or total disability."

Phillips filed a petition with the Workers' Compensation Court August 8, 1984, requesting further

3

benefits under the Occupational Disease Act or benefits under the Workers' Compensation Act. He appeals the court's findings denying further benefits.

> As to questions of fact, we are limited to examining the record to determine whether it contains substantial credible evidence to support the court's findings. If this quantum of evidence is in the record, we will defer to the trier of fact's resolution of the factual dispute . . .

Wassberg v. Anaconda Copper Co. (Mont. 1985), 697 P.2d 909, 912, 42 St.Rep. 388, 391.

A thorough review of the record indicates substantial credible evidence to support the court's findings that Phillips' respiratory condition is due to the work environment. The medical records reflect ongoing respiratory problems, Dr. Schimke's initial report to the Division said his condition was due to the work environment, and Phillips testified he was having work related respiratory problems by March, 1983.

There also is substantial credible evidence Phillips did not sustain an injury. "Injury" means:

> (1) A tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom and excluding disease not traceable to injury, except as provided in subsection (2) of this section;

> (2) cardiovascular or pulmonary or respiratory diseases contracted by a paid firefighter . . . Nothing herein shall be construed to exclude any other working person who suffers a cardiovascular, pulmonary, or respiratory disease while in the course and scope of his employment.

Section 39-71-119, MCA.

Although § 39-71-119(1), MCA, excludes diseases not traceable to injury, subsection (2) does not automatically exclude respiratory diseases contracted while in the course

4

and scope of one's employment. Occupational diseases are defined in the Occupational Disease Act as "all diseases arising out of and contracted from and in the course of employment." Section 39-72-102(11), MCA. We have held that although a claimant may have a compensible disease under the Occupational Disease Act, that status does not preclude eligibility under the Workers' Compensation Act. Ridenour v. Equity Supply Co. (Mont. 1983), 665 P.2d 783, 786, 40 St.Rep. 1012, 1015. When an employee contracts a respiratory disease in the course and scope of his employment, he may elect coverage under the Occupational Disease Act or the Workers' Compensation Act if he can meet the requirements of both Acts. Ridenour, supra, at 787, 40 St.Rep. at 1017.

> [T]he legislature realized that these kinds of diseases, while normally considered under the Occupational Disease Act, could be compensable as injuries under the definition of subsection (1) of 39-71-119, MCA.

Ridenour, supra.

The evidence shows Phillips suffers a respiratory disease resulting from his employment. Although he is not automatically excluded, he must show he suffered a "tangible happening of a traumatic nature from an unexpected cause" to be included.

The two definitive elements of "time definiteness" and "unexpectedness," must be shown to establish an injury. Wise v. Perkins (Mont. 1983), 656 P.2d 816, 820, 40 St.Rep. 1, 6. Phillips claims the splashing incident involving the can of solvent is both time definite and unexpected. There is sufficient medical evidence the splashing incident lacks medical significance, making it unnecessary to determine the date it occurred.

Dr. Schimke testified he did not believe exposure to the solvent would cause a persistent cough, that it would

5

have had only a temporary adverse effect on Phillips' bronchitis, and "was just another incident in a chain of events that led to his problems." Schimke testified that Phillips' medical history included "symptoms of cough, wheezing, and intermittent breathlessness" as early as October, 1978. In 1979 he was hospitalized after being exposed to welding fumes for a three to four month period. Based on Phillips' medical history, it is not unexpected he should suffer recurring attacks of bronchitis, regardless of the splashing incident.

We find substantial credible evidence to support the conclusion of the Workers' Compensation Court:

> It is apparent that while the chemical splashing did occur, it had no permanent effect and did not cause Claimant's current physical problems. Claimant did not suffer an industrial injury which would entitle him to workers' compensation benefits.

The Workers' Compensation Court correctly found that Phillips was not totally disabled. Disability is not a purely medical condition.

> A worker is disabled when his ability to engage in gainful employment is diminished as a result of impairment, which in turn may be combined with such factors as the worker's physical condition, age, education, work history, and other factors affecting the worker's ability to engage in gainful employment . . .

Section 39-71-121, MCA.

We previously set out the applicable considerations in establishing disability:

> To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work-related injury.

6

Metzger v. Chemetron Corp. (Mont. 1984), 687 P.2d 1033, 1035, 41 St.Rep. 1788, 1790.

By September, 1983, Dr. Schimke characterized Phillips' chronic bronchitis as a minimal impairment. A year later Schimke found no total or permanent disability. A clinical psychologist testified Phillips should not be precluded "from working normally in the jobs which are consistent with his medical conditions, employment experience, and abilities." Phillips himself testified that physically he could handle jobs in a clean environment. He defined his normal labor market to include substantial experience in non-strenuous clean air positions. His doctors released him for such position, and he did not provide contrary evidence.

There is no evidence Phillips is entitled to award of penalty for unreasonable delay or refusal by the Insurer to pay. The Insurer accepted the determination by the Workers' Compensation Division that Phillips suffered from an occupational disease. On order from the Division, Phillips was paid total disability benefits until Dr. Schimke, finding he was no longer totally disabled, released him for work. The insurer met its statutory responsibilities under § 39-71-2907, MCA. The statutory requirements for attorney's fees are not met.

Finally, we find Phillips is not entitled to a new trial pursuant to § 25-11-102(4), MCA. Phillips claims he has newly discovered evidence and a new witness who can pinpoint the date of the splashing incident. Notwithstanding the fact Phillips already presented numerous witnesses on this question, the court previously found the date of the incident was unimportant because the doctors' testimony attaches no medical significance to it. In addressing Phillips' claim that the Workers' Compensation Court is

obliged to reach a finding of total disability pending retraining because he had been certified for retraining by the Department of Social and Rehabilitation Services, the court said in its order denying a new trial:

> Merely because the Department of Social and Rehabilitation Services has placed an individual into a rehabilitation program does not necessarily mean that that individual is totally disabled under Montana's Workers' Compensation Act.

The Order of the Workers' Compensation Court is affirmed.

John Conway Harrison
Justice

We concur:

J. A. Turnage
Chief Justice

John C. Sheehy

L. C. Gulbrandson

William E. Hunt
Justices

8