No. 81-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

ODEAN L. FROST,

Claimant and Respondent,

vs.

ANACONDA COMPANY,

Employer,

and

THE ANACONDA COMPANY,

Defendant and Appellant.

---

Appeal from: Workers' Compensation Court
Honorable William Hunt, Judge presiding.

Counsel of Record:

For Appellant:

Utick and Grosfield, Helena, Montana
Andrew Utick argued, Helena, Montana

For Respondent:

Neil J. Lynch argued, Butte, Montana

---

Submitted: April 1, 1982

Decided: May 13, 1982

Filed:

*Thomas J. Kearney*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The Workers' Compensation Judge, William E. Hunt, issued an order on July 31, 1981, granting benefits to claimant, Odean Frost, despite a four and one-half year gap between claimant's injury and the filing of his claim for benefits. Section 39-71-601, MCA, establishes a one year statute of limitations for filing such claims. Frost's employer, The Anaconda Company, appeals from that order. We affirm.

On October 21, 1974, claimant slipped and fell off an ore shovel at the Berkely Pit. Frost landed on his lower back, stood up without assistance and worked the remaining six hours of his shift. At the request of the Pit supervisor, Bud Brisban, Frost filed an accident report that night. An entry was made in the Pit's ledger indicating that the accident had occurred. However, no report of the accident reached the Claims Office as no immediate medical attention was required. It was the policy of the Pit at that time to report to the Claims Office only accidents which resulted in immediate medical attention.

Although Frost's back did not significantly bother him subsequent to the accident, he began to progressively lose control over one of his legs. In August 1975, Frost went to a doctor who determined that the leg difficulties were due to a disc problem caused by the accident at the Pit. Surgery was performed; however, Frost's leg still continues to cause him great discomfort. He has been unable to work since 1975.

Following surgery, Frost notified The Anaconda Company's Claims Office that he would not be returning to work.

Although the accident was recorded in the Pit ledger the night it occurred, there is no evidence indicating that the Company was told in 1975 by Frost that his inability to return to work was due to a work-related injury. Therefore, after having Frost complete some forms, office worker Ed Nimi set Frost up in the Company's "METRO" program.

The METRO program is offered by The Anaconda Company to its salaried employees unable to work due to any disability, whether or not work related. The program is designed so that both workers' compensation and social security benefits are offset against the METRO payments. Under the METRO program, Frost received 100% of his salary for the first six months he missed work, long-term disability benefits in the amount of 70% of his salary for each month missed thereafter, 100% of his hospital expenses and 80% of his doctor and pharmacy expenses. Had Frost received workers' compensation benefits, he would have been eligible for 66 2/3% of his salary for each week he was unable to work, as well as medical and hospital expenses pursuant to section 39-71-704, MCA. Therefore, the METRO benefits were substantially comparable to, if not greater than, the workers' compensation benefits available to Frost.

On December 23, 1978, Frost received notice that the Metropolitan Life Insurance Company was terminating his METRO benefits while they redetermined his eligibility. He was reinstated six months later, with full reimbursement of the previous six months' payments. However, in order to avoid future terminations of benefits, Frost filed for workers' compensation. Those benefits have statutory protections against arbitrary termination. See Title 39, Chapter 71, Part 6, Montana Code Annotated.

The Company's claims' officer, Mr. Bugni, determined that no claim for workers' compensation had ever been completed

by Frost. Bugni sent a claim form to Frost, who completed it and returned it to Bugni in late April 1979, four and one-half years after his accident. Section 39-71-601, MCA, establishes a one year statute of limitations for filing such claims. Mr. Frost's claim was therefore three and one-half years late. On that basis, The Anaconda Company subsequently denied any liability to Frost.

Claimant then filed a petition in the Workers' Compensation Court requesting that he be awarded benefits. A hearing was held January 16, 1980, before Roger Tippy, a Workers' Compensation Court-appointed hearings examiner. Mr. Tippy issued findings of fact and conclusions of law on June 13, 1980, denying workers' compensation benefits to the claimant "on the grounds that he did not file a claim for compensation within twelve months of the occurrence of his accident as required under [section] 39-71-601, MCA." The Workers' Compensation Judge adopted those findings of fact and conclusions of law and issued a judgment and order dated June 24, 1980, dismissing claimant's petition for benefits.

A rehearing was requested and held before Judge Hunt on July 21, 1981. On July 31, 1981, Judge Hunt issued an amended judgment and order containing the following findings of fact: (1) the Company enrolled the claimant in the METRO program but failed to file a claim for workers' compensation benefits or inform Frost of his right to do so; (2) the claimant did not realize the METRO benefits lacked the statutory protections given workers' compensation; and (3) the claimant did not know he had waived protection under the Workers' Compensation Act until he applied for benefits in 1979.

Judge Hunt applied the above findings to part of the test for equitable estoppel found in Lindblom v. Employers' Etc. Assur. Corp. (1930), 88 Mont. 488, 494, 295 P. 1007, 1009:

(1) There must be conduct -- acts, language, or silence -- amounting to a representation or a concealment of material facts.

(2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him.

Judge Hunt then found that the Company should have known claimant was eligible for workers' compensation and that its silence regarding the above facts amounted to concealment of material facts. He therefore held that the Company was estopped from asserting the statute of limitations as a defense to Frost's claim and that Frost was eligible to receive workers' compensation benefits.

The sole issue before this Court is whether the Workers' Compensation Judge correctly forbade The Anaconda Company from asserting the one year statute of limitations found in section 39-71-601, MCA, as a bar to claimant's recovery of workers' compensation benefits. We affirm the Workers' Compensation Judge's decision, although for reasons different than those relied on by that Judge.

Judge Hunt relied upon the doctrine of equitable estoppel in determining that the statute of limitations defense was not available to The Anaconda Company. In so doing, he cited only two of the six essential elements of estoppel discussed in Lindblom v. Employers' Etc. Assur. Corp., supra. Judge Hunt found that material facts known to the

Company were kept concealed from the claimant. However, he failed to find that the claimant's reliance on the Company's silence was to his detriment, another essential element of estoppel. See also Ricks v. Teslow Consolidated (1973), 162 Mont. 469, 512 P.2d 1304.

We find that claimant suffered no detriment. He received METRO benefits which were substantially comparable to benefits he would have received under the Workers' Compensation Act. In fact, for the first six months he was unable to work, he received 33 1/3% more benefits than he would have under the Act. In addition, although claimant's benefits under the METRO program were terminated for six months, he recovered the full unpaid amount when he was reinstated in the program. Claimant Frost was inconvenienced, but did not suffer any detriment.

We choose instead to affirm the lower court's decision on the basis that "compensation" paid by the Company to Mr. Frost tolled the statute of limitations for filing his claim. "Compensation," in order to toll the statute of limitations, must consist of benefits substantially comparable to or greater than the benefits available to the same employee under the Workers' Compensation Act.

In Ricks v. Teslow Consolidated, supra, this Court held that medical payments would not toll the statute of limitations for filing a workers' compensation claim. This decision does not affect Ricks in any way. We do not believe medical payments to be sufficient compensation to warrant tolling the statute of limitations for the recipient.

Compensation, to toll the statute, must be sufficient to convince the recipient that he is receiving such a large percentage of workers' compensation benefits available to

him that to seek further benefits would be a wasted effort. "The purpose of the tolling provision is to prevent an employer from lulling a claimant into a false sense of security by apparently acknowledging the validity of his claim, paying remuneration in lieu of compensation, and then invoking the statute after the lapse of one year." Cupit v. Dancu Chemical Co. (Okla. 1957), 316 P.2d 593 at 595. This rationale is also discussed in Riccioni v. American Cyanamid Co. (1953), 26 N.J. Super. 1, 96 A.2d 765; Silva v. Sandia Corporation (10th Cir. 1957), 246 F.2d 758; Reed v. Fishing Engineering Corporation (1964), 74 N.M. 45, 390 P.2d 283; and United States Steel Corporation v. Iwaskewycz (1972), 7 Pa. Comwlth. 211, 298 A.2d 62.

Arthur Larson, in his treatise on workers' compensation law, discusses the effect of voluntary payments of compensation on statutory limitations for the filing of workers' compensation claims. The relevant section is §78.43, The Law of Workers' Compensation, by Arthur Larson, pages 15-111 through 15-145. Larson states on page 15-115 that "(w)hen payment of . . . income . . . has been made by a private employer-employee benefit association or insurance plan, this has usually been held to toll the statute."

The Florida court in Watson v. Delta Airlines, Inc. (Fla. 1973), 288 So.2d 193, held that voluntarily furnished remedial treatment and voluntarily paid disability benefits served to toll the statute for the filing of a workers' compensation claim.

The Tennessee court in Norton Co. v. Coffin (Tenn. 1977), 553 S.W.2d 751, held that the employer's voluntary payment of compensation and medical services tolled the statute of limitations for filing a workers' compensation

claim. Similar decisions can be found in Mihesuah v. Workmen's Compensation Appeals Board (1973), 29 Cal.App.3d 337, 105 Cal.Reptr. 561, 37 Cal.Comp.Cas. 790; Caterpillar Tractor Co. v. Industrial Commission (1965), 33 Ill.2d 78, 210 N.E.2d 215; Dunay v. International Smelting and Refining Co. (1960), 60 N.J.Super. 546, 160 A.2d 80; and Drinkwater v. Orkin Exterminating Co. (Okla. 1961), 361 P.2d 834.

A second factor required to toll the statute of limitations is knowledge on the part of the employer that he is paying compensation as a result of an industrial accident. "To constitute the payment of compensation there is a minimal necessity that the employer shall have some knowledge of the effect of what he is doing. . ." Buxbaum v. Cumberland Provision Co. (1961), 14 A.D.2d 425, 221 N.Y.S.2d 339, at page 342.

The Anaconda Company, in the instant case, contends that they had no knowledge that claimant's inability to work was due to an industrial accident. We disagree. The facts show that the foreman had knowledge that Frost's injuries were industrial related. The foreman's knowledge should be imputed to The Anaconda Company. "Notice of an accident to one's supervisor is adequate notice to the employer." Hester v. Westchester General Hospital (Fla. 1972), 260 So.2d 505.

The decision of the Workers' Compensation Court is affirmed for the reasons discussed above.

Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices