No. 81-400

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

———————

MICHAEL N. JAEGER,

Claimant and Appellant,

vs.

STAUFFER CHEMICAL COMPANY,

Employer,

and

TRAVELERS INSURANCE COMPANY,

Defendants and Respondents.

———————

Appeal from: Workers' Compensation Court
Honorable William Hunt, Judge presiding.

Counsel of Record:

For Appellant:

R. Lewis Brown, Jr. argued, Butte, Montana

For Respondents:

Poore, Roth, Robischon & Robinson, Butte, Montana
James P. Harrington argued, Butte, Montana

———————

Submitted: April 1, 1982

Decided: May 20, 1982

Filed: MAY 20 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant appeals from the June 30, 1981, order of the Workers' Compensation Court, adopting the findings and conclusions of the hearing examiner that claimant's injury is not compensable because his claim was not timely filed. No basis was found for equitably estopping respondent from asserting late filing as a defense; and the Workers' Compensation Division held that the hearing examiner had correctly rejected claimant's request for a filing deadline extension. We reverse the Workers' Compensation Court.

Claimant presents the following issues for review:

(1)  Whether the Workers' Compensation Court erred in upholding the hearing examiner's rejection of plaintiff's request for an extension of time to file his claim.

(2)  Whether the Workers' Compensation Court erred in adopting the hearing examiner's conclusion that equitable estoppel did not apply.

(3)  Whether claimant is entitled to fees, costs, and penalty.

Claimant injured his back wrenching open a box car door at work on February 9, 1977.  Testimony conflicts as to whether he informed his supervisor, but respondent did not challenge the trial court's finding that Stauffer Chemical had actual notice of claimant's injury.  Claimant worked in pain, taking off many days, (and at one time taking off three months) for bed rest, heat therapy, traction, and a myelogram.  His doctor diagnosed his back problem as a possible ruptured disc.  Claimant continued to receive full salary until he was involuntary retired in September of 1978, for reasons unrelated to his back problem.

Claimant first filed for workers' compensation benefits in late April of 1979, when his six-months' severance pay (full salary) ended, more than two years after his injury. Respondent denied him benefits for failure to file his claim within 12 months, as required by section 39-71-601(1), MCA. On June 30, 1981, following trial and remand to the Workers' Compensation Division for a determination whether a waiver of the statutory limitation period was justified, the hearing examiner entered his findings of fact and conclusions of law. That same day the Workers' Compensation Court adopted the hearing examiner's findings and conclusions, and entered its judgment that (1) claimant's claim was untimely; (2) the Division's refusal to extend the time for filing was correct; (3) Stauffer engaged in no conduct which would estop it from preventing claimant from asserting his claim; and (4) claimant was entitled to no attorney's fees, costs, or penalties. Claimant's request for rehearing was denied, and he appeals to this Court.

I.

Claimant concedes that he told a doctor his back problem was not caused by an accident, but maintains that he believed an accident had to be something violent "like a fall." He also argues that he lacked knowledge of a disability because the statutes link disability to loss of wages and he was receiving full salary. See section 39-71-116(12), (13) and (19), MCA [formerly R.C.M. 1947 §§92-439, 92-440, and 92-441].

The transcript indicates that claimant was aware of his injury. He knew what action had precipitated it. He emphasized that working caused him such pain that his supervisors must have been aware of it. He repeatedly sought medical help,

-3-

and knew within a few weeks of his accident that he had a possible ruptured disc in his back. And claimant admitted that if a co-worker had reported sustaining a back injury as a result of pulling or lifting extra hard, he, as a supervisor, would have filled out an accident form. We are not persuaded that claimant was unaware he had injured his back as the result of an accident.

Nor does claimant persuade us that he was unaware of his disability simply because he was receiving the same salary from Stauffer as he received prior to his injury. The statutes dealing with permanent disability refer not only to "loss of earnings," but to "loss of earning capability." Besides, this Court has recognized for many years that the difference between actual post-injury earnings and post-injury earning capability may be the difference between eligibility and ineligibility for benefits. It is not enough that a person is earning post-injury wages equal to those he earned before his accident. If his injury has left him less capable or incapable of competing in the open labor market, there is loss of earning capability, and there is eligibility for benefits. See Hafer v. Anaconda Aluminum Co. (1982), ____ Mont. ____, ____ P.2d ____, 39 St.Rep. 796, 799-780; Fermo v. Superline Products (1978), 175 Mont. 345, 348, 574 P.2d 251, 253; Shaffer v. Midland Empire Packing Co. (1953), 127 Mont. 211, 213, 259 P.2d 340, 342.

Here, claimant was working fairly regularly, and was receiving full salary. But he was taking a good deal of time off for back treatments, two weeks (afternoons) in February of 1977, another week in fall of 1977, and three months between October 1977 and January, 1978. He admitted

-4-

he was not doing all that he had before his accident; he "was not to do any sitting, twisting, or any excessive lifting of any type" and he was not able to help co-workers as he had before. He was working in obvious pain. Clearly claimant could not have competed in the open labor market as he could have prior to his back injury. Thus, although claimant may have believed he was not disabled with respect to loss of earnings, he could hardly have believed he was not disabled with respect to earning capability. We find that the Workers' Compensation Court correctly refused to extend the period for claimant to file, holding that claimant had made no satisfactory showing of his lack of knowledge of disability under section 39-71-601(2).

## II.

Claimant presented evidence that Stauffer had a policy of discouraging injured employees from filing claims for workers' compensation benefits by paying their full salaries whether or not they were able to fulfill their duties as before. According to claimant, the purpose of the policy is to keep Stauffer's record clear of lost-time accidents, but its effect is to dissuade workers with compensable injuries from timely filing for workers' compensation benefits. Claimant argues that such conduct by Stauffer should estop it from relying upon the filing limitations statute to deny the claim of those injured employees.

Stauffer, through its plant manager, Ray Tilman, resolutely denied ever having had a policy of denying or discouraging legitimate industrial accident claims. But on cross-examination Tilman admitted that Stauffer encouraged injured employees to come in and do light duty; and that if an injured employee would not come in, "You end up with a lost time accident, at

-5-

which time the employee would go ahead and file for compensation from workers' compensation." Tilman also stated:

". . . if the doctor says that the man can
come to work and he does come to work and
as a part of his rehabilitation he cannot
spend all the time at work, he has to go to
the doctor, he has to do different things,
we pay his full wages."

". . .

"What we try to do is we try to convince the
guy that we can give him meaningful employment
and provide that, because of his accident he's
not going to lose wages. And try to convince
him that it's to his best interest if he comes
to work as long as the doctor says he can.

"Q. So that if I understand correctly, if a
man is hurt and receives treatment and the
doctor says he can come to work the follow-
ing day and he does, then that's not treated
as a lost time injury, is it?

"A. No it's not.

"Q. Even though he's injured and it doesn't
enter into your safety reporting statistics?

"A. That's correct.

"Q. This was your same policy in 1977 as far
as you know?

"A. That's correct."

The gist of Tilman's testimony is that if an injured worker returns to work, as he is encouraged to do, and does light work, he will be paid full salary, and neither a lost time accident report nor an industrial accident claim will be necessary. Furthermore, the company encourages workers to go along with the policy in their own best interest, and allows them time off at full salary for therapy, visits to the doctor, etc. Testimony of both claimant and witness Cotton indicates that full salary was paid, despite their being unable to work for a month or more.

This Court does not wish to disparage or curtail what may well be a benevolent policy of Stauffer's, a means of

providing both work and financial support to its injured employees. We are unwilling to apply the doctrine of equitable estoppel, with its attendant implications of bad faith.

We refer to the recent case of Frost v. Anaconda Company, No. 81-389, decided by this Court on May 13, 1982. There, a workman suffered a progressively debilitating injury in a fall in October of 1974. He reported the injury and was able to work until 1975. For three years after he became disabled, he received benefits under Anaconda's METRO program for its disabled workers. After the benefits were temporarily terminated, and then reinstated, Frost filed for workers' compensation. Anaconda denied liability on the grounds that the claim was not timely filed. The Workers' Compensation Court forbade Anaconda from asserting the statute of limitations, relying upon the doctrine of equitable estoppel. This Court found equitable estoppel inappropriate because claimant had suffered no detriment, and stated:

> "We choose instead to affirm the lower court's decision on the basis that 'compensation' paid by the Company to Mr. Frost tolled the statute of limitations for filing his claim. 'Compensation,' in order to toll the statute of limitations, must consist of benefits substantially comparable to or greater than the benefits available to the same employee under the Workers' Compensation Act." Frost v. Anaconda Co., supra, at page 6.

Frost discusses at length the effect of voluntary payments of compensation upon statutory limitations for filing workers' compensation claims. See also A. Larson, The Law of Workers' Compensation §78.43. It is not necessary to repeat that discussion here.

We find that Stauffer's payment to claimant of full salary, during a period of more than a year and a half, despite claimant's frequent lengthy absences from work, and

his inability to perform his full duty as before, amounted to payment of compensation and tolled the statute of limitations for claimant's filing of his claim.

Since the rationale for the tolling of the statute is that workers should be protected against the possibility that payment equivalent to workers' compensation may lull an injured worker into failure to timely file for workers' compensation, we do note that under certain circumstances, the facts may require a different conclusion. As an example, it may be that an employer can eliminate the tolling of the statute of limitations, where he is providing compensation to an injured employee, by a procedure which clearly notifies the employee of the necessity of filing a claim for workers' compensation benefits within the statutory period.

### III.

Claimant Jaeger is entitled to attorney's fees and costs under section 39-71-611, MCA. We do not find, however, that he is entitled to a penalty under section 39-71-2907, MCA, as he requests. That statute allows for a 20% increase in compensation by the workers' compensation judge, if the insuror has unreasonably refused compensation to a claimant. Also, because the very recent case of Frost v. Anaconda Co., supra, which is controlling here, introduces a new element into Montana workers' compensation law, we do not find that respondents unreasonably rejected Jaeger's claim.

Reversed.

_____
Justice

-8-

We Concur:

_Frank I. Haswell_
Chief Justice

_Jean D. Daly_

_Daniel J. Shea_

_John B. Harrison_
Justices