No. 87-366

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

WILLIAM F. SHARKEY,

        Claimant and Appellant,

    -vs-

ATLANTIC RICHFIELD COMPANY,
operating as ANACONDA MINERALS
COMPANY, a/k/a, THE ANACONDA
COMPANY,

        Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court,
              In and for the Area of Helena, MT,
              The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gene B. Daly, Helena, Montana

    For Respondent:

        Andrew J. Utick, Helena, Montana

Submitted on Briefs:  May 4, 1989

Decided:  July 13, 1989

Filed:

_____
              Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This appeal arises from an order by the Workers' Compensation Court, concluding that the claimant did not incur a new industrial injury in 1981 and that claimant is properly receiving permanent partial benefits according to rates applicable to a 1978 injury. From this order, the claimant appeals. We affirm.

The issues are:

1. Did the Workers' Compensation Court err in concluding that the claimant did not sustain an industrial injury in 1981?

2. Did the Workers' Compensation Court err in concluding that the statute of limitations was not tolled on the basis of equitable estoppel?

3. Did the Workers' Compensation Court err in concluding that the statute of limitations was not tolled because the employer made payments in lieu of compensation?

4. Did the Workers' Compensation Court err in concluding that the reduction in benefits was not unreasonable?

5. Did the District Court err in awarding attorney fees and costs pursuant to § 39-71-612, MCA (1978)?

Mr. William Sharkey suffered an industrial accident on September 10, 1978, while employed by the Atlantic Richfield Company (ARCO), when he fell from a ladder approximately twelve feet to the ground. His left arm hooked into the ladder as he fell, and he sustained injuries to his left shoulder. Mr. Sharkey was treated by Dr. Losee for this injury. This treatment included surgery on the shoulder in December of 1978. Mr. Sharkey returned to work for ARCO in May of 1979 with no physical restrictions.

ARCO accepted liability for this injury and paid temporary total disability benefits while Mr. Sharkey was unable

2

to work. ARCO also paid medical expenses. In December of 1979 the parties negotiated a final settlement for this injury for the sum of $3,948.00, which represented 42 weeks of permanent partial disability benefits at the rate of $94.00 per week.

In late 1981, Mr. Sharkey began experiencing problems with his left shoulder again. He contends that these problems stemmed from a new work-related injury which occurred on December 16, 1981. Mr. Sharkey claims that on that date he was lifting the hood on a fuel truck when his left shoulder "gave out," causing the hood to fall on him. He claims that his left shoulder was re-injured in this accident.

Mr. Sharkey testified that he reported the accident to his supervisor, Mr. Johnson, who made out a written report in Mr. Sharkey's presence. Mr. Sharkey also testified that he told Mr. Bugni, ARCO's Workers' Compensation Coordinator, that he hurt his shoulder.

Also, in December of 1981, Mr. Sharkey obtained authorization to see Dr. Losee for his shoulder problem. This authorization was obtained from Ms. Nelson, a claims adjuster for the insurer, E.S.I.S., Inc. Dr. Losee referred Mr. Sharkey to Dr. Matsen at the University Hospital in Seattle, Washington, who performed surgery on Mr. Sharkey's shoulder in March of 1982.

Ms. Nelson reopened Mr. Sharkey's 1978 injury claim following the January 1982 examination by Dr. Losee. Beginning in February 1982 Mr. Sharkey began receiving Workers' Compensation temporary total benefits at the same rate he had received for his 1978 injury. These benefits amounted to $188 per week and continued until they were reduced to permanent partial benefits of $94 per week, in February 1983.

3

## I

Did the Workers' Compensation Court err in concluding that claimant did not sustain an industrial injury in December of 1981?

In reviewing a decision of the Workers' Compensation Court, the standard of review is whether substantial credible evidence exists to support the findings and conclusions of the Workers' Compensation Court. Stangler v. Anderson Meyers Drilling Co. (Mont. 1987), 746 P.2d 99, 101, 44 St.Rep. 1944, 1947. Findings of fact are not clearly erroneous if they are supported by substantial credible evidence. Tenderholt v. Travel Lodge Intern. (Mont. 1985), 709 P.2d 1011, 1013, 42 St.Rep. 1792, 1794.

Additionally, in Wight v. Hughes Livestock Co., Inc. (1981), 634 P.2d 1189, 1191, 38 St.Rep. 1632, 1635, rev'd on other grounds, 204 Mont. 98, 664 P.2d 303 (1983), this Court stated:

> "If the Workers' Compensation Court's findings are based on conflicting evidence . . . this Court's function on review is confined to determining whether there is substantial evidence on the whole record supporting such findings." Harmon v. Deaconess Hospital (1981), Mont., 623 P.2d 1372, 1374, 38 St.Rep. 65, 67-68, and cases cited therein.

The Workers' Compensation Court found that Mr. Sharkey did not sustain a new industrial injury on December 16, 1981. Although Mr. Sharkey claims that he injured his left shoulder when the hood fell on him in December of 1981, there is no evidence in the record from either written documents or oral testimony, to corroborate Mr. Sharkey's assertion. At trial, aside from Mr. Sharkey's assertion, the evidence indicated that the 1981 shoulder problem stemmed from the 1978 injury.

4

While Mr. Sharkey testified that he reported this injury to his supervisor, Mr. Johnson, who filled out a written report, Mr. Johnson did not testify at trial and no accident report was ever filed. Mr. Sharkey claims that he reported his shoulder injury to Mr. Bugni in person on the day of the accident. However, Mr. Sharkey could not remember if he told Mr. Bugni how he hurt his shoulder.

In testifying at trial, Mr. Bugni referred to notes he had taken during his conversation with Mr. Sharkey. According to those notes, the conversation occurred the day after the accident, and was over the telephone. Mr. Bugni testified that Mr. Sharkey did not mention a new accident or injury; rather, Mr. Sharkey told him he was having more problems with his shoulder from his previous 1978 injury.

There is no evidence indicating that Mr. Sharkey informed either Dr. Losee or Ms. Nelson of a new accident; instead, the evidence indicated that both Dr. Losee and Ms. Nelson understood that his 1981 shoulder problems had developed over a period of months. Dr. Losee, in his letter to Dr. Matsen, indicated that the shoulder problems had developed over a period of several months. He testified that he had no record or recollection that Mr. Sharkey informed him of a new injury to his shoulder. Ms. Nelson stated that she had no knowledge that Mr. Sharkey was claiming a new injury until 1985. Both Mr. Bugni and Ms. Nelson testified regarding the records which would have been made, had Mr. Sharkey reported a new and separate injury in 1981. Their files, however, contained no records to corroborate Mr. Sharkey's claim.

Mr. Sharkey contends that ARCO has made a judicial admission in this case, admitting that Mr. Sharkey indeed sustained a new injury in 1981. It is true that at trial, ARCO also argued for a determination that Mr. Sharkey had

sustained a work-related injury in 1981. Such a finding, combined with a determination that no notice was given of the injury, would have meant the statute of limitations had run for this claim, thereby preventing a recovery. In fact, the Workers' Compensation Division might have been entitled to a reimbursement from Mr. Sharkey for benefits already paid.

The Workers' Compensation Court properly considered the actual facts which were presented at trial through witnesses and exhibits. What ARCO may have contended is irrelevant to the factual determination made by the court. When the testimony is conflicting, it is the trial court which judges the credibility of the witnesses and this Court defers to that assessment. "Ordinarily, this Court will not substitute its judgment for that of the Workers' Compensation Court in determining the weight and credibility to be given testimony." Rule 52(a), M.R.Civ.P.; Jones v. St. Regis Paper Co. (1981), 196 Mont. 138, 146, 639 P.2d 1140, 1144. The court found the facts to compel a conclusion that Mr. Sharkey did not sustain a new injury in 1981.

Our review of the record demonstrates that there is substantial credible evidence to support the findings of the Workers' Compensation Court. We conclude that the court was correct in determining that no new injury occurred in 1981. We affirm the holding of the Workers' Compensation Court.


II

Did the Workers' Compensation Court err in concluding that the statute of limitations was not tolled on the basis of equitable estoppel?

The elements of equitable estoppel were enunciated in Lindblom v. Employers' Liability Assur. Corp., (1930), 88 Mont. 488, 494, 295 P. 1007, 1009 as follows:

6

Generally speaking, the following are the essential elements which must enter into and form a part of an equitable estoppel in all of its applications: "1. There must be conduct--acts, language, or silence--amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or a least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. * * * 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

Mr. Sharkey contends that ARCO is equitably estopped from asserting the statute of limitations defense. He contends that the employer's silence in not notifying Mr. Sharkey that he was being paid according to 1978 rates meets the first element of equitable estoppel. Our holding in the first issue, however, resolves this dispute. To constitute an estoppel, it would be necessary for ARCO to have knowledge or imputed knowledge of material facts entitling Mr. Sharkey to 1981 benefits. ARCO would then have to conceal these facts. As in Devlin v. Galusha, Higgins and Galusha (1982), 202 Mont. 134, 138-39, 655 P.2d 979, 981, neither the employer in the present case nor the insurer engaged in any conduct which would amount to a representation or concealment of a material fact. It was the claimant's omission which brought about a failure to file a claim. This court has previously

7

held that estoppel does not apply where the omissions of the party claiming estoppel caused the problem.

Additionally, the third element of estoppel, that the claimant was unaware of the truth, is questionable. Mr. Sharkey had previously been paid benefits based on his 1978 wages. These benefits were reinstated and were still based on the 1978 rates. Mr. Sharkey must be imputed with knowledge that his benefits should reflect the alleged 1981 date of injury. However, he accepted benefits based on the 1978 rates. Thus equitable estoppel is inapplicable because the first three elements are not met. We affirm the holding of the Workers' Compensation Court in concluding that equitable estoppel does not apply.

Mr. Sharkey also contends that ARCO violated § 39-71-204, MCA (1978), by reinstating Mr. Sharkey's 1978 benefits after a final settlement without obtaining a written order from the Workers' Compensation Division, and without notifying the claimant in writing. This contention fails because § 39-71-204, MCA (1978), does not require that the Division approve in writing of the reopening of a claim, or that it notify the claimant in writing.


III

Did the Workers' Compensation Court err in concluding that the statute of limitations should not be tolled because the employer made payments in lieu of compensation?

Mr. Sharkey contends that the payments he received through the reinstatement of 1978 benefits tolled the statute of limitations on filing a workers' compensation claim. According to this theory, the statute may be tolled where an employer makes voluntary payments which are substantially comparable to or greater than benefits available through workers' compensation. See generally 3 A. Larson, The Law of

Workers' Compensation § 78.43 (1987). The concern is that an employer may lull the claimant into a "false sense of security by apparently acknowledging the validity of his claim, paying remuneration in lieu of compensation, and then invoking the statute after the lapse of one year." Frost v. Anaconda Co. (1982), 198 Mont. 216, 221, 645 P.2d 419, 422, citing Cupit v. Dancu Chemical Co. (Okla. 1957), 316 P.2d 593 at 595. In Frost we also stated that to toll the statute under this theory, the employer should have some knowledge of the effect of what he is doing. Frost, 645 P.2d at 423, quoting Buxbaum v. Cumberland Provision Co. (1961), 14 A.D.2d 425, 221 N.Y.S.2d 339, at page 342.

Claimant relies on Frost to support his contention but the cases are not comparable. In Frost, the employer paid compensation from an employee benefit plan, which was totally separate from workers' compensation benefits. The payments were comparable to or greater than workers' compensation benefits. This created a false sense of security in the employee, leading him to believe it was unnecessary to file a workers' compensation claim.

In the present case the payments were clearly workers' compensation disability benefits, and the amounts were based on 1978 rates. Neither the payments nor the conduct of the employer would mislead Mr. Sharkey into believing he did not need to file a claim for the alleged new injury. We conclude that the payments made to Mr. Sharkey did not toll the statute of limitations. We affirm the ruling of the Workers' Compensation Court on this issue.

IV

Did the Workers' Compensation Court err in concluding that a reduction in benefits to the claimant was not unreasonable?

9

In 1983, Ms. Nelson reduced Mr. Sharkey's benefits from temporary total benefits of $188 per week to permanent partial benefits of $94 per week. Mr. Sharkey contends that this reduction was "unreasonable." He further contends that if the reduction was unreasonable, he is entitled to an increased award pursuant to § 39-71-2907, MCA (1978), which provides for a 10% penalty when benefits are unreasonably refused or delayed.

Mr. Sharkey contends that the reduction was unreasonable, apparently because he was enrolled in a rehabilitation program through Social Rehabilitation Services with a goal of obtaining certification as a vo-tech teacher. Mr. Sharkey's contention may be attributable to the fact that § 39-71-116(19), MCA, the statute defining temporary total benefits, was amended in 1985 to state that temporary total benefits were appropriate during a period of retraining. However, this amendment was not in effect when Mr. Sharkey was injured, and we have previously stated that the statute in effect on the date of injury controls. Homme v. Rauenhorst (Mont. 1987), 740 P.2d 1110, 1113, 44 St.Rep. 1261, 1265. We also point out that this amendment has subsequently been deleted. Thus, the Workers' Compensation Court is not obligated to reach a finding of total disability simply because the claimant is in a retraining program. Homme, 740 P.2d at 1113; Phillips v. Spectrum Enterprises (Mont. 1986), 730 P.2d 1131, 1135, 43 St.Rep. 2288, 2292.

Temporary total disability is defined in § 39-71-116(19), MCA (1978), as follows:

> "Temporary total disability" means a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit.

10

Permanent partial disability is defined in § 39-71-116(12), MCA (1978), as follows:

"permanent partial disability" means a condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capability less than total that exists after the injured workman is as far restored as the permanent character of the injuries will permit.

Additionally, in Anderson v. Carlsons Transport (1978), 178 Mont. 290, 294, 583 P.2d 440, 442, we stated:

"'[T]emporary total disability ceases when the workman's physical condition is as far restored as the permanent character of the injuries will permit. When the claimant has reached this stage in his healing process temporary total disability ceases, and partial disability begins if there is permanent partial impairment.'" (Quoting McAlear v. McKee (1976), Mont., 558 P.2d 1134, 1137, 33 St.Rep. 1337, 1340.)

At trial, Ms. Nelson testified that she made the decision to reduce Mr. Sharkey's benefits to permanent partial based on a medical report and a Work Capacity form from Dr. Losee, a medical report from Dr. Baggenstos, and rehabilitation reports. These reports indicated that Mr. Sharkey was medically stable and that there was work available for him. A review of the record demonstrates that claimant was as far restored as the permanent character of his injuries would permit. The record also demonstrates that work was available which Mr. Sharkey could perform. This evidence fulfills the definitional requirements of permanent partial disability and indicates that the change was properly made. See, McDanold v. B.N. Transport, Inc. (1984), 208 Mont. 470, 475, 679 P.2d 1188, 1191. Mr. Sharkey cannot properly contend that permanent partial benefits are not appropriate merely because he was involved in a rehabilitation program.

11

To prevail under § 39-71-2907, MCA (1981), the claimant must show unreasonableness. Paulson v. Bozeman Deaconess Foundation Hosp. (1984), 207 Mont. 440, 444, 673 P.2d 1281, 1283. Additionally, whether the insurer's conduct was unreasonable is a factual question and this ruling by the Workers' Compensation Court will not be overturned if supported by substantial credible evidence. Coles v. Seven Eleven Stores (1985), 704 P.2d 1048, 1052, 42 St.Rep. 1238, 1242. The Workers' Compensation Court determined that the reduction was not unreasonable and we conclude that there is substantial credible evidence to support that determination. We therefore affirm this ruling.

V

Did the District Court err in awarding attorney fees and costs pursuant to § 39-71-612, MCA (1978)?

The Workers' Compensation Court allowed attorney fees and costs pursuant to § 39-71-612, MCA (1978), which allows fees when the amount of benefits is in controversy. Mr. Sharkey contends that attorney fees and costs should have been allowed pursuant to § 39-71-611, MCA (1978), which allows fees when benefits are denied or terminated.

The record demonstrates that the Workers' Compensation Fund paid temporary total benefits of $188 per week until February of 1983, at which time the award was reduced to permanent partial benefits of $94 per week. As a result, it is clear that attorney fees cannot be awarded under § 39-71-611, MCA (1978), which applies only where benefits are denied or terminated. Mr. Sharkey was awarded 500 weeks of permanent partial benefits by the Workers' Compensation Court. The Division had argued for an award of only 280 weeks of permanent partial, or in the alternative, for no benefits based on a statute of limitations defense. Clearly

12

the amount of benefits was in controversy, and Mr. Sharkey received an award in excess of what the Division offered. We therefore conclude that attorney fees and costs were properly awarded pursuant to § 39-71-612, MCA (1978).

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13