**Daniel LINNERTZ, Appellant,**

v.

**NORTH DAKOTA WORKERS' COMPENSATION BUREAU, and United Parcel Service, Appellees.**

**Civ. No. 920323.**

Supreme Court of North Dakota.

July 1, 1993.

Lynn M. Boughey (argued), Minot, for appellant.

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers' Compensation Bureau, Bismarck, for appellee North Dakota Workers' Compensation Bureau.

Scott D. Jensen, of McElroy, Camrud, Maddock & Olson, Grand Forks, for appellee United Parcel Service. Submitted on brief.

NEUMANN, Justice.

Daniel Linnertz has appealed from a district court judgment affirming a Workers Compensation Bureau order dismissing his claim for benefits. We reverse and remand.

Linnertz has been employed as a package delivery driver by United Parcel Service (UPS) since 1978. On December 30, 1988, Linnertz visited Dr. Paul Ellenbecker, a Minot chiropractor, complaining of pain between his shoulder blades. Ellenbecker determined that the injury was a gradual one, beginning in 1986, caused by Linnertz's work-related driving, lifting, and twisting. After that visit to Ellenbecker, Linnertz submitted an insurance claim form to UPS's private health insurance carrier. That carrier paid eighty percent of Linnertz's chiropractic expenses for the next year, until it determined that the injury was work-related and refused further payments.

In June 1990, Linnertz applied for workers compensation benefits, alleging an injury date of May 1, 1990. The Bureau found that Linnertz's date of injury was December 30, 1988; that § 65–05–01, N.D.C.C.,

requires original claims for compensation to be filed within one year of injury; and that Linnertz's claim was not filed within one year of the date of injury. The Bureau dismissed the claim on December 20, 1990.

Linnertz requested and received a formal hearing. After a hearing on June 3, 1991, the Bureau issued findings of fact, conclusions of law, and an order of dismissal on June 23, 1992. The Bureau found:

"IV.

"Claimant acknowledged at hearing that he knew that his back problems were work related as early as 1986. Linnertz confirmed that he had discussed the fact that these problems were work related with Dr. Ellenbecker in December of 1988. . . .

"V.

"As justification for not filing his claim within one year from the date that he knew it was work related, the claimant offers as an excuse, employer's misconduct. Claimant alleges that the conduct of his employer lead him not to file a workers compensation claim and that the employer and Bureau should be estopped from now asserting the statute of limitations to bar the claim. In this regard, Linnertz asserts that his employer discourages employees from filing workers compensation claims and encourages them instead to file under a general health carrier. Other employees of UPS have confirmed that United Parcel Service encourages workers to file under their general health carrier rather than workers compensation. However, I do not find any misrepresentation by the employer nor any reliance on the part of claimant. Therefore, I do not find sufficient factual evidence to estop the Bureau or employer from asserting the statute of limitations to bar this claim."

The Bureau concluded that Linnertz failed to file a timely application, that there were not "sufficient facts to estop the Bureau and employer from asserting" the statute of limitations, and that Linnertz's employer did not make any misrepresentations or cause him not to file a workers compensation claim. The Bureau dismissed Linnertz's claim. Linnertz appealed to the district court, which affirmed the Bureau's dismissal.

■ Section 65–05–01, N.D.C.C., provides in part:

"All original claims for compensation must be filed by the injured worker, or someone on the injured worker's behalf, within one year after the injury or within two years after the death. The date of injury for purposes of this section must be the actual date of injury when such can be determined with certainty by the claimant and bureau. When the actual date of injury cannot be determined with certainty the date of injury must be the first date that a reasonable person knew or should have known that the injury was related to employment."

The dispositive issue on appeal is whether or not UPS and the Bureau may be equitably estopped from asserting § 65–05–01, N.D.C.C., to bar Linnertz's claim for benefits, which was filed more than one year after Linnertz knew that his injury was related to his employment. We conclude that equitable estoppel may be applied to bar an assertion that a claim was untimely under § 65–05–01, N.D.C.C.

In *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 129 (N.D.1990), this court said: "The doctrine of equitable estoppel may operate to preclude the application of a statute of limitations as a defense by one whose actions mislead another, thereby inducing him not to file a claim within the statute of limitations." The Bureau has argued that the doctrine of estoppel "should not be applied against the State fund for any representations made by the employer." We disagree. We held in *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 920 (N.D.1984), that "estoppel against the government is not absolutely barred as a matter of law," emphasizing "that the doctrine is not one which should be applied freely against the government, but likewise it is not one which should never be available." The purpose of the workers compensation fund is to

provide "for workers injured in hazardous employments, and for their families and dependents, sure and certain relief ... regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation." Section 65–01–01, N.D.C.C. We see no good reason to refuse to apply the doctrine of estoppel against the workers compensation fund created by the payment of premiums by employers, which payments earn the employers immunity from claims for relief by injured employees. *See* §§ 65–01–08, 65–04–01, 65–04–04, and 65–04–28, N.D.C.C. As the Minnesota Supreme Court has said:

> "... The fund is a 'public fund' only in the sense that the public welfare is highly involved with its proper administration.... Contributions to the fund are made by compensation—paying employers *generally* to defray an industrial burden for which they are deemed collectively responsible.... If the fund's purpose is to be realized, it must be so administered that the burden of employment disability remains with industry and is not transferred to the public."

*Senske v. Fairmont & Waseca Canning Co.*, 232 Minn. 350, 45 N.W.2d 640, 646 (1951).

Section 65–05–01, N.D.C.C., "must be construed liberally in favor of injured workers so that benefits may be extended to all who are fairly entitled to them." *White v. North Dakota Workers Comp. Bureau*, 441 N.W.2d 908, 910 (N.D.1989). "When an employer voluntarily makes compensation payments, the period for filing a claim usually dates from the last payment. In many statute[s] this rule is written into the claim period section itself; it may also be arrived at by the route of waiver or estoppel." 2B Arthur Larson, *The Law of Workmen's Compensation*, § 78.43(a) (1993). "When payment of either income or medical benefits has been made by a private employer-employee benefit association or insurance plan, this has usually, but by no means invariably been held to toll the statute." *Id.* § 78.43(c). "A familiar defense to assertion of the bar of late claim is the plea that the lateness was the result of the employer's assurances, misrepresenta-

tions, negligence, or even deliberate deceptions." *Id.* § 78.45. In states with no tolling provision for good cause or mistake, "the issue usually takes the form of the question whether the employer should be held estopped to invoke the bar." *Id.* § 78.45. This case presents a combination of factors justifying an equitable tolling of the statute to protect Linnertz from an unjust denial of benefits.

■ In *Jaeger v. Stauffer Chem. Co.*, 198 Mont. 263, 645 P.2d 942, 946 (1982), the court held that the employer's payment of claimant's full salary for a year and a half tolled the statute of limitations for claimant's filing of his claim and stated that "workers should be protected against the possibility that payment equivalent to workers' compensation may lull an injured worker into failure to timely file for workers' compensation." "Compensation, to toll the statute, must be sufficient to convince the recipient that he is receiving such a large percentage of workers' compensation benefits available to him that to seek further benefits would be a wasted effort." *Frost v. Anaconda Co.*, 198 Mont. 216, 645 P.2d 419, 422 (1982). However, the Montana court stated that medical payments were not "sufficient compensation to warrant tolling the statute of limitations for the recipient." *Id.* 645 P.2d at 422. Linnertz did not miss work because of his back condition and had no claim for lost wages. UPS's health insurer paid 80 percent of Linnertz's chiropractic bills, and Linnertz testified that "I was satisfied with paying my 20 percent of their bills." We believe that UPS's provision of private insurance payments covering eighty percent of Linnertz's chiropractic expenses, coupled with evidence of employer misrepresentation and a general pattern of employee confusion facilitated by UPS, warrants tolling the statute of limitations until the last insurance payment.

■ An employer who "lulls the employee into a false sense of security, causing him to withhold suit until after the period has expired, ... cannot invoke the time bar to defeat compensation." *Dupa-*

*quier v. City of New Orleans,* 260 La. 728, 257 So.2d 385, 387–88 (1972). An employer's representations can bar reliance on a statute of limitations if they "mislead the claimant into believing that he can postpone the filing of his claim until the period of limitation has expired." *Ex parte Youngblood,* 413 So.2d 1146, 1149 (Ala. 1981). An employer's misleading statements need not be purposely deceptive to estop the employer from relying on a statutory time bar against its injured employee's claim for workers compensation benefits. *Neuberger v. Hennepin County Workhouse,* 340 N.W.2d 330 (Minn.1983).

 Pursuant to §§ 28–32–19 and 28–32–21, N.D.C.C., the courts are required to affirm an administrative agency decision unless one of the six factors listed in § 28–32–19, N.D.C.C.,[1] is present. *Stepanek v. North Dakota Workers Comp. Bureau,* 476 N.W.2d 1 (N.D.1991); *Triangle Oilfield Services, Inc. v. Hagen,* 373 N.W.2d 413 (N.D.1985). Our review of the factual basis of an administrative decision involves a three-step process to determine: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings; and (3) if the decision is supported by the conclusions of law. *Griffin v. North Dakota Workers Comp. Bureau,* 466 N.W.2d 148 (N.D.1991). In determining if the Bureau's findings are supported by a preponderance of the evidence, we determine if the Bureau could have reasonably reached its factual determinations by the greater weight of all the evidence. *White v. North Dakota Workers Comp. Bureau, supra.*

Linnertz testified that he submitted his claim to UPS's employee health insurance company, rather than to the Bureau, because of reliance on his supervisor, Brad Jennison:

"After getting the first insurance form from Dr. Ellenbecker's office, I was just assuming I was going to turn it into my insurance company just to see if they would pay it, and I asked my manager at the time, which was Brad Jennison, if I could or should turn it in to Workmen's Compensation, and he told me they wouldn't pay for any claims if there was no date of injury, which I didn't have. I couldn't determine when I got hurt."

When asked if he had thought "of checking that with the Workers Compensation Fund," Linnertz replied: "No. I never checked on it. I believed my supervisor knew what he was talking about, and I had no reason to believe he was wrong." "[I]t is reasonable for an employee to rely on the employer's presumably greater knowledge of such matters." *Neuberger v. Hennepin County Workhouse, supra,* at 332.

Jennison testified that UPS had a policy that "employees report an injury at the time the injury happens." When asked if Linnertz reported a back injury to him in December 1988, Jennison replied: "To the best of my recollection, no." When asked if he had ever told Linnertz that "he could not file a workers compensation claim for his back, because he had to have a definite or certain injury date," Jennison responded: "No. I don't recall." Jennison's testimony that he did not recall telling Linnertz he could not file a workers compensation

---

1. *"28–32–19. Scope of and procedure on appeal from determination of administrative agency.* A judge of the district court must review an appeal from the determination of an administrative agency based only on the record filed with the court. After a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court must affirm the order of the agency unless it shall find that any of the following are present:

"1. The order is not in accordance with the law.

"2. The order is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions of law and order of the agency are not supported by its findings of fact.

"If the order of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the order of the court."

claim because he did not have a definite injury date distinguishes this case from *Grotte v. North Dakota Workers' Comp. Bureau*, 489 N.W.2d 875 (N.D.1992), in which we upheld a Bureau finding that Grotte's employer did not discourage him from filing a workers compensation claim. Grotte's supervisor "adamantly denied that he did anything to discourage Grotte from filing a claim." *Id.* at 879. A failure to recall is very different from an adamant denial.

Counsel for UPS and Linnertz stipulated that a number of UPS employees would testify about employer discouragement of filing workers compensation claims and employer-generated employee confusion about when to file workers compensation claims or when to seek payment from the company's health insurance carrier:

"It was my understanding that unless you are missing work, you are not to fill out a report. Either Brad Jennison or Mike Dowling told me that if it is not of a serious nature, don't file. Dowling specifically stated that you shouldn't file worker's comp until you actually missed work." (John Vincent).

"In situations where there is an injury, we are told to turn it in on the Aetna Insurance form. However, I have never been told not to fill out a workers compensation form. When I have asked about chiropractic, they have told me to turn it into Aetna Insurance.... Basically, it's as if they say 'if you don't have to fill out an accident report, don't.' " (Dave Marsland).

"I think that UPS has said to fill out insurance forms instead of Workers Compensation forms. When my back bothered me, I filled out an insurance form. It seems to be that's the way it's done. No one seems to ever mention Workers Compensation. They just go for the insurance forms that seems to be the way they go.

\* \* \* \* \* \*

"United Parcel Service has never made it clear as to which forms to use. I was always under the impression, even during the last few years, that we were to use the insurance forms." (Dale Herr).

"Normally I have just gone through the Aetna Insurance relating to back pain.... If you are able to work I have assumed that you are not to file with workers compensation.... If you're not losing time from work, it's my understanding that you were to file for the Aetna Insurance.

\* \* \* \* \* \*

"Most of us are still under the belief that if you get hurt on the job, you send it to Aetna first. If they say it is work related, then we send it to Workers Comp." (Ron Peterson).

Employee statements about employer discouragement of workers compensation claims and of confusion about when to file a workers compensation claim was corroborated by Jennison. Jennison testified that employees had free access to medical forms for insurance purposes, without supervisory review, but that "injury report forms were kept in the file in the manager's office." Jennison testified that an injury report form is an internal report completed by an injured employee with supervisor assistance or review before being sent to UPS's Sioux Falls office, from which all workers compensation claims are submitted. That evidence of free employee access to insurance forms, but limited access to injury report forms necessary for filing workers compensation claims is indicative of employer discouragement of workers compensation claims and of the employer's contribution to a general pattern of employee confusion about when to file workers compensation claims and when to file insurance claims.

Under the foregoing facts, we conclude that the Bureau and UPS should be equitably estopped from asserting the statute of limitations to bar Linnertz's claim for workers compensation benefits. The Bureau's contrary conclusion is not sustained by its findings of fact, its finding of no misrepresentation or reliance is not supported by a preponderance of the evidence, and its order is not in accordance with the law.

Where, as here, an employer provides its employees with private health insurance coverage and an injured worker is receiving insurance payments, the employer discourages the filing of workers compensation claims and encourages the filing of private insurance claims, there is a general pattern of employee confusion about when to file a workers compensation claim and when to file an insurance claim and that confusion is facilitated by the employer, the employer has a burden of showing that it made reasonable efforts to inform employees about when an insurance claim is appropriate, when a workers compensation claim is appropriate, and of the necessity of timely filing for workers compensation claims. *See Jaeger v. Stauffer Chem. Co.*, *supra*, 645 P.2d at 946: "[I]t may be that an employer can eliminate the tolling of the statute of limitations, where he is providing compensation to an injured employee, by a procedure which clearly notifies the employee of the necessity of filing a claim for workers' compensation benefits within the statutory period." If the employer fails to meet that burden, then the one-year period within which to file a workers compensation claim under § 65–05–01, N.D.C.C., is equitably tolled until the injured worker receives the last private insurance carrier payment.[2]

We need not address other issues raised. "Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services, Inc. v. Brooks*, 229 N.W.2d 69, 70 Syllabus ¶ 3 (N.D.1975). The Bureau did not rule on Linnertz's claim that he had sustained a new back injury in December 1989. Linnertz may pursue a ruling on remand.

The district court judgment is reversed and the matter is remanded to the district court with instructions to remand to the Bureau for entry of an order in accordance with this opinion.

LEVINE, MESCHKE and SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

I do not agree that *Grotte v. N.D. Wkrs' Comp. Bureau*, 489 N.W.2d 875 (N.D.1992) is distinguishable because "Grotte's supervisor 'adamantly denied that he did anything to discourage Grotte from filing a claim'" and that a "failure to recall is very different from an adamant denial." In using such a basis to distinguish this case from *Grotte*, the majority is weighing evidence, not determining whether or not a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence from the entire record. *Grotte, supra*. It is within the Bureau's province to weigh the credibility of the evidence presented, *id.*, and the Bureau has the responsibility and duty to pass on the credibility of witnesses before it, including the claimant, and to weigh the evidence and make findings on disputed questions of fact. *Id.*

I am even more skeptical about applying the doctrine of equitable estoppel against the State in this case than I was in *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 922 (N.D.1984) [VandeWalle, J., concurring specially]. Here the actions which are used to create the estoppel against the State, the Bureau, are not the actions of its employees or agents, but the actions of a private employer.

Nor can I accept the majority's reliance on *Senske v. Fairmont & Waseca Canning Co.*, 232 Minn. 350, 45 N.W.2d 640 (1951) as a reason for concluding that estoppel does not apply against the State. That case did not involve estoppel. The statement from *Senske* quoted in the majority opinion was made in the context of

---

**2.** Most of the authorities cited in 2B Arthur Larson, *The Law of Workmen's Compensation* § 78.43(c) (1993), have tolled the statute of limitations for the filing of claims until the injured worker receives the last private insurance payment, and we, therefore, have done likewise for the facts in this case. We note, however, that in certain situations, such as a relapse of a condition caused by a work-related injury, the notifying event for the injured worker might be the disallowance of his workers compensation claim following relapse, rather than his receipt of the last private insurance payment.

answering the question of whether or not the Minnesota State Treasurer as Custodian of the Special Compensation Fund had any discretionary control over the payment of disability benefits from the Fund, and whether the Attorney General could compromise and settle a claim against the Special Compensation Fund. The Minnesota Court concluded neither the State Treasurer nor Attorney General had any discretionary control over the Fund. That responsibility was with the Minnesota Industrial Commission which, by statute, was to direct the distribution of the Fund. *Senske* and the rhetoric quoted therefrom is inapposite to a decision of whether equitable estoppel is applicable against the Fund.

Although the Court has not had occasion to consider a case of equitable estoppel in which the employer, through insurance or other means, has compensated an employee for an injury at a rate equal to or greater than the worker's compensation benefit which would be payable, the majority in *Grotte* quoted from the Montana Supreme Court decision in *Frost v. Anaconda Co.*, 198 Mont. 216, 645 P.2d 419, 452 (1982):

> "Compensation, in order to toll the statute of limitations, must consist of benefits substantially comparable to or greater than the benefits available to the same employee under the Worker's Compensation Act.

> \* \* \* \* \* \*

> "Compensation, to toll the statute, must be sufficient to convince the recipient that he is receiving such a large percentage of workers' compensation benefits available to him that to seek further benefits would be a wasted effort."

*Grotte, supra*, 489 N.W.2d at 880.

Here, it is conceded that under the insurance policy Linnertz was required to and did pay 20% of the medical costs which he incurred as a result of his injury.[1] This fact alone mitigates against Linnertz's contention that he believed filing a claim would be wasted effort or unnecessary to protect his rights to full benefits. Nor is the Bureau's finding that Linnertz's employer "discourages employees from filing Worker's Compensation Claims and encourages them instead to file under a general health carrier"—a finding with which the majority does not and cannot take issue— contrary to the Bureau's conclusion that such facts are not sufficient to estop the Bureau from applying the statute of limitations. I would require a stronger showing than a "general pattern of employee confusion" to justify estoppel. We have held in other instances that we will not adopt a "per se" confusion rule. *See Hammeren v. North Dakota State Highway Com'r*, 315 N.W.2d 679 (N.D.1982). Although there may have been confusion, as the Bureau finds, the Bureau also found no reliance on the part of Linnertz and concluded that the facts were not sufficient to justify estoppel. That conclusion is sustained by the findings.

Finally, if the employer did mislead Linnertz, I would conclude that the appropriate remedy is not estoppel against the Bureau, for that remedy affects more than the devious employer—it can affect all employers in the same classification. *See* NDCC §§ 65–04–04; 65–04–04.2. *See also* NDCC § 65–04–17.

A better remedy would be to estop the employer from raising the exclusive-remedy provision of section 65–01–08, NDCC, in the instance where the employee was injured as a result of the employer's negligence; or where, as here, it appears that the injuries are not due to the employer's negligence but to the employer's alleged misrepresentation, the exclusive-remedy provision should be set aside to permit the employee to seek damages for the employer's deceit. Such a remedy, in addition to compensating the employee, would more likely prevent any deceit or purposeful con-

---

1. The requirement in the Montana cases is that the employee receive a benefit substantially comparable to or greater than the benefit available to the same employee under Workers' Compensation Act also distinguishes *Jaeger v. Stauffer Chem. Co.*, 198 Mont. 263, 645 P.2d 942 (1982), in which the Montana Court held that the employer's payment of claimant's *full salary* tolled the statute. It seems doubtful Montana would reach the same conclusion as the majority based on the record in this case.

fusion by employers and would, I believe, prompt employers to carefully inform their employees of the right to file a claim with the Bureau.

Because I would affirm the judgment of the district court affirming the decision of the Bureau, I respectfully dissent.