296 P.2d 759

Robert GARCIA, Claimant, Plaintiff-Appellant,

v.

NEW MEXICO STATE HIGHWAY DEPARTMENT, Employer,

and

Mountain States Mutual Casualty Co., Insurer, Defendants-Appellees.

No. 6057.

Supreme Court of New Mexico.

May 1, 1956.

Joseph L. Smith, Henry A. Kiker, Jr., Oscar H. Beasley, Albuquerque, for appellant.

A. T. Hannett, G. W. Hannett, T. G. Cornish, Albuquerque, for appellees.

McGHEE, Justice.

Plaintiff brought action under the Workmen's Compensation Act against his employer, New Mexico State Highway Department, and its insurer, Mountain States Mutual Casualty Co., for compensation for personal injuries resulting from an automobile accident which occurred February 10, 1953. Claim was filed on April 26, 1954. By answer the defendants set forth that the defendant employer, as an agency of the state, was immune from suit without its consent and further that plaintiff's claim was barred because not filed within one year after the defendant insurer's failure or refusal to pay compensation; dismissal was asked as to both defendants.

A hearing was had before the court and, in accordance with findings of fact and conclusions of law made by it, judgment of dismissal was entered as to both defendants.

The plaintiff appeals from the dismissal of the claim as to the defendant insurer, arguing his claim was not barred by the statute of limitations, § 59–10–13, N.M.S.A. 1953, in that payment of certain of his medical expense by the insurer in November, 1953, constituted payment of compensation within the purview of the Workmen's Compensation Act and effectively removed the bar of the statute of limitations, or that his delay in filing his claim was

caused in whole or in part by conduct of the defendants in paying his medical expense and making offer of settlement, which led claimant to believe compensation would be paid, relying upon § 59–10–14, N.M.S.A.1953.

At the hearing before the court plaintiff's deposition, taken by stipulation of the parties, was presented and considered by the court. Both sides filed requested findings of fact and conclusions of law. The findings of fact made by the court may be summarized as follows:

On February 10, 1953, the plaintiff, while working as a field man for the New Mexico State Highway Department, suffered an accidental injury arising out of and in the course of his employment at or near Bernalillo, New Mexico. The defendant insurer paid installments of compensation to him beginning February 11, 1953, and continuing through March 10, 1953. At all times since March 10, 1953, plaintiff has known of his disability and has claimed a permanent disability as a result of his accident but claim was not filed until April 26, 1954. Under § 59–10–18, N.M.S.A. 1953, compensation, once started, is to be paid at regular intervals of not more than sixteen days apart and the next compensation from the insurer became due not later than March 26, 1953. The defendant insurer failed to make compensation payment on that date and has failed to pay regular installments of compensation since March 10, 1953. The only conduct claimed by plaintiff to have led him to believe compensation would be paid is set forth in his deposition and briefly summarized is that in other compensation cases involving the highway department settlements had been made by the compensation carrier, of which plaintiff had knowledge, and that defendant insurer had paid certain of plaintiff's doctor bills subsequent to the last payment of compensation and consented to his being further treated.

The court concluded that plaintiff failed to file his claim within one year from the failure of the defendant insurer to pay the installment of compensation to which the plaintiff was entitled on or about March 26, 1953, and that the claim was barred under § 59–10–13, supra; that no conduct of the employer or insurer led plaintiff to believe his installments of compensation would be paid and that plaintiff's claim should be dismissed.

We will first consider the question whether payment of medical expenses by an employer or insurer constitutes a payment of compensation under our Workmen's Compensation Act tolling the period of limitation. Section 59–10–13, supra, provides, so far as material here:

"The compensation herein provided shall be paid by the employer to any injured workman entitled thereto in semi-monthly instalments as nearly equal as possible excepting the first instalment which shall be paid not later than thirty-one (31) days after the

date of such injury. * * * In event such employer shall fail or refuse to pay the compensation herein provided to such workman after having received such notice, or, without such notice when no notice is required, it shall be the duty of such workman, insisting upon the payment thereof, to file a claim therefor in the manner and within the time hereinafter provided. In event he shall either fail to give such notice within the time required, or fail to file such claim within the time hereinafter required, his claim for such compensation and all right to the recovery of the same and the bringing of any legal proceeding for the recovery thereof shall be and is hereby forever barred. * * * *In event of the failure or refusal of any employer to pay any workman entitled thereto any instalment of the compensation to which such workman may be entitled* under the terms hereof, such workman shall be entitled to enforce the payment thereof by filing in the office of the clerk of the district court a claim which shall be signed and sworn to by the injured workman or some one on his behalf before any officer authorized to administer oaths, and *filed not later than one* (1) *year after such refusal or failure of the employer so to pay the same.* * * * *"* (Emphasis supplied.)

The plaintiff argues that because payments for surgical, medical and hospital services and medicines are included in the description of "compensation" under § 59–10–19, N.M.S.A.1953, they should also be considered to be a payment of an instalment of compensation tolling the period of limitation. The defendant insurer contends, on the other hand, that the last mentioned section, and § 59–10–18, N.M.S.A. 1953, when read in conjunction with § 59–10–13, supra, make it clear that reference to installments of compensation means payment of semi-monthly benefits and cannot mean payments in discharge of medical expense.

Section 59–10–18, supra, provides, in part:

"No compensation shall be due or payable under this act * * * for any injury which does not result in either the temporary disability of the workman lasting for more than seven (7) days or in his permanent disability or permanent injury, as herein described, or death; Provided, however, that if the period of temporary disability of the workman shall last for more than four (4) weeks from the date of the injury, then compensation under this act * * * shall be payable in addition to the amounts hereinafter stated in a like amount for the first seven (7) days after date of injury.

"But for any such injury for which compensation is payable under this act * * * the employer shall in all proper cases, as herein provided, pay to the injured workman or to some

person authorized by the court to receive the same, for the use and benefit of the beneficiaries entitled thereto, compensation at regular intervals *or* [of] no more than sixteen (16) days apart, in accordance with the following schedule, * * *."

Section 59-10-19, supra, provides, *inter alia:*

"No compensation shall be allowed for the first seven (7) days after injury is received except where such injury results in disability of the workman for more than four (4) weeks, then compensation shall be allowed from the date said injury occurred; * * *

"After injury, and continuing so long as medical or surgical attention is reasonably necessary, the employer shall furnish all reasonable surgical, medical, osteopathic, chiropractic and hospital services and medicine, not to exceed the sum of seven hundred dollars ($700.00), unless the workman refuses to allow them to be furnished by the employer, provided nevertheless: In the event hospital, medical and surgical attention is necessary, in excess of the above sum and the employer refuses to furnish the same, the employee may make application to the district court for an order requiring the employer to furnish such additional hospital, medical, and surgical services as may be found by the court to be rea-

sonably necessary to fully and completely care for the employee.

* * * * * *

"Compensation for all classes of injuries shall run as follows:

"Surgical, medical and hospital services and medicines, as provided in this section. After the first seven (7) days, compensation during temporary disability lasting less than four (4) weeks from date of injury and provided that after four (4) weeks from date of injury if the workman continues to be temporarily disabled, then also for the first seven (7) days, until the injury has healed, and thereafter compensation as provided in this act * * * as amended according to the condition of permanent total or permanent partial disability the workman has suffered as a result of the injury. * * *"

Plaintiff in support of his contention the period of limitation was tolled by payment of medical expense relies upon numerous cases from other jurisdictions passing upon the question under their compensation statutes, the question never having been ruled upon by this Court. A considerable number of these cases are digested in the annotation entitled: "Payments, or furnishing medical or hospital services, or burial, by employer or his insurer, to employee after injury, as affecting time for filing claim under Workmen's Compensation Act," 144 A.L.R. 606, 617, under the general statement:

"Where the facts are sufficient to show that an employer or his insurance carrier has furnished an injured employee medical and hospital services, it is generally held that this constitutes a payment of compensation, or a waiver which suspends the running of the time for filing a claim for compensation."

Of course, the wording of the limitation provisions varies from state to state, but our examination of the authorities relied upon shows the following cases to be typical of this line of authority: Industrial Commission of Colorado v. Globe Indemnity Co., 1923, 74 Colo. 52, 218 P. 910; Richardson v. National Refining Co., 1933, 136 Kan. 724, 18 P.2d 131; McEneny v. S. S. Kresge Co., Mo.App.1932, 53 S.W.2d 1075, and Baade v. Omaha Flour Mills Co., 1929, 118 Neb. 445, 225 N.W. 117.

The Colorado statute has since been amended to provide that furnishing of medical, surgical or hospital treatment by the employer shall not be considered payment of compensation within the meaning of its limitation provision, but the decision in Industrial Commission of Colorado v. Globe Indemnity Co., supra [74 Colo. 52, 218 P. 911], was based upon a statute providing:

" ' * * * If no such notice is given, and no payment of compensation has been made within one year from the date of the accident, the right to compensation therefor shall be wholly barred.' " § 62, p. 515, Colo.Laws 1915.

It was there held:

" * * * defendant in error claims that no compensation was paid within the year, but the employer within that time paid certain hospital, surgical, and medical expenses of the claimant, which plaintiff in error says is compensation under the act. With that we agree. Such payment is clearly within the meaning of the word compensation. See Webster, Century Dictionary, Words & Phrases, First & Second Series, pages 1352, 826, and the use of the word elsewhere in the Act; e. g., § 57(1). This conclusion is strengthened by the fact that the Act of 1919, C.L. § 4458, expressly excepts such expenses and certain others from the payments of compensation which will prevent the bar."

The statute before the Kansas court, § 44–520a, Rev.St.Supp., 1931, in the case of Richardson v. National Refining Co., supra [136 Kan. 724, 18 P.2d 132], provided:

" 'No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or to his duly authorized agent, * * * or in cases where compensation payments have been suspended within ninety (90) days after the date of the last payment of compensation.' "

Of a contention like that made here, the Kansas court declared:

"* * * The answer to this question lies in the statute. R.S.Supp.1931, 44–510, provides, among other things, as follows: 'The amount of compensation under this act shall be: (1) Treatment and care of injured employees. It shall be the duty of the employer to provide the services of a physician or surgeon and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches and apparatus, as may be reasonably necessary to cure and relieve the workman from the effects of the injury; but the cost thereof shall not be more than $100, nor shall the period of time during which same are to be provided exceed sixty (60) days from date of accident.' It will be seen that the statute provides that the furnishing of medical aid is the payment of compensation.

"Since this is the case, we conclude that the written claim for compensation was filed within time."

In McEneny v. S. S. Kresge Co., supra [53 S.W.2d 1077], the statute considered was described as providing:

"* * * that no proceeding for compensation shall be maintained unless the claim therefor be filed with the commission within six months after the injury, it also provides that in case payments have been made on account of the injury or death within six months from the date of the last payment, the date for the filing of the claim is extended to date from such last payment. * * *" (§ 3337, Mo. Rev.St., 1929)

The court continued:

"* * * It is essential, therefore, to determine what is a last payment within the provisions of this section.

"Section 3311, Rev.St.1929 (Mo.St. Ann. § 3311 and note) provides that in addition to all other compensation the employee shall receive and the employer shall provide such medical, surgical, and hospital treatment, etc., as may reasonably be required.

"Thus it will be seen that section 3311 specifically provides that medical treatment shall be considered as a part of the compensation the employee shall receive * * * [citing cases], and since payments on account of an injury within six months preceding the date of the filing of the claim tolls the statute, it seems to us that since the rendition of medical services at the instance of the employer or his insurer comprises part of the compensation of the injured person, therefore, if the employer or his insurer has caused the rendition of medical services to the injured person, it constitutes the payment of compensation under the Workmen's Compensation Act * * *."

In Baade v. Omaha Flour Mills Co., supra [118 Neb. 445, 225 N.W. 118], the statute declared:

" 'In case of personal injury, all claim for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in section 3680 (3062) hereof. * * * Where, however, payments of compensation have been made in any case, said limitation shall not take effect until the expiration of one year from the time of the making of the last payment.' " (§ 3061, Neb. Comp.St., 1922)

The Nebraska court ruled:

"Without going more into detail, we think the defendants by their conduct recognized liability, and this, in part, from the fact that their physician had not released plaintiff, and also because the expenses for medical and hospital services were paid by the defendant's insurance company almost up to the time that plaintiff filed his claim for compensation. The payments made by plaintiff's employers to his physician for hospital expenses and the like clearly constitute payments of compensation within the meaning of section 3061, Comp.St.1922, above cited, which provides, *inter alia,* that 'said limita-tion shall not take effect until the expiration of one year from the time of the making of the last payment.' "

The review of these cases and statutes is somewhat lengthy, but this exposition is deemed necessary to demonstrate what we deem to be a major and crucial difference between other statutes and ours —a difference to which we cannot close our eyes even under the canon of liberal construction of the compensation act to effect its remedial purposes. The difference is that under our law the act which sets the period of limitation running is the failure or refusal of the employer to pay any workman entitled thereto any *installment* of the compensation to which such workman may be entitled.

The qualifying word "installment" does not appear in the statute of limitations of any other state among the many we have examined and which have been called to our attention.

We are of opinion that the use of this word in the limitation provision, considered in conjunction with other provisions of the act set out above, compels the conclusion that the period of limitation commences to run upon the failure or refusal of employer or insurer to pay the regular semi-monthly benefits established under the act. By the inclusion of this word the legislature has rendered our statute even more restrictive in this regard than those statutes from jurisdictions where it has been held the giving of medical benefits and the making

of payments therefor do not constitute payment of compensation which will toll the period of limitation. See, for example: Marshall v. Pletz, 1943, 317 U.S. 383, 63 S. Ct. 284, 87 L.Ed. 348; Royer v. United States Sugar Corporation, 1941, 148 Fla. 537, 4 So.2d 692; Pipes Chevrolet Co. v. Bryant, Ky.1954, 274 S.W.2d 663, and Paolis v. Tower Hill Connellsville Coke Co., 1919, 265 Pa. 291, 108 A. 638.

It must therefore be held that the trial court correctly ruled plaintiff's claim was not seasonably filed, unless plaintiff is correct in his contention that the delay in the filing of claim was caused in whole or in part by conduct of the defendants in the matters of paying for his medical care and making offer of settlement (which offer he refused) which reasonably led him to believe compensation would be paid.

In his deposition plaintiff testified:

"Q. Now, you have alleged in your claim, Bob, that the defendants' conduct—the defendants are New Mexico State Highway Department and the Mountain States Mutual Casualty Company—has reasonably led you to believe that compensation to which you are entitled will be paid in full. Now, what has been their conduct? A. Well, in my work I have done a lot of safety work. Every time they fire a safety man I take over the job. I handle the papers and send them on to Santa Fe. That was the impression I got—don't worry about anything this man will be taken care of. After I had seen Dr. Forbis and Dr. Clark they told me it was time I needed to get better. So I just kept on taking time to see what I could do to improve my knee. And I figured when nothing else could be done for my knee, ankle and back I would get settlement for it that was reasonable.

"Q. This was the conduct of the Highway Department? A. Not so much the Highway Department—it was the insurance people.

"Q. And just what had they done? A. When somebody did get hurt we put in a report, and call them and they take good care of them, get treatment and doctor bills and everything right away. When the times comes around they will be around to take care of your settlement and whatever claim you have against them.

"Q. Was that all of their conduct which you relied on as having led you to believe that you were going to get compensation? A. No, that was not the only thing that led me to believe that I would get compensation. I knew I had a disability. I was pretty sure that they would compensate me for it. After I had exhausted all the methods the doctors had given me —Dr. Forbis showed me how to walk on my foot to relieve the pressure on my back. The insurance people said it was perfectly all right to go to Dr. Forbis and try him out.

"Q. Well, was there any other conduct that you can think of? A. No, sir. Not offhand. I can't think of anything else.

"Q. Well, summarizing it, would this be a statement of what you said that they did in previous instances when persons had been injured while working for the Highway Department—they had taken care of their claims and had told you to see that good care was taken of them, and that they had said to get good treatment from the doctors and go to such doctors as you see fit? A. Yes, sir.

\* \* \* \* \* \*

"Q. And when were you last attended by any of the three physicians you mentioned. A. I saw Dr. Clark about one and one-half months ago or a month ago.

"Q. And the insurance company has paid all those bills? A. Yes, sir.

"Q. Now, Mr. Fred Calkins—are you acquainted with him? A. Yes, sir. He is with the insurance company.

"Q. Did Mr. Calkins at any time tell you that he would pay you compensation?

"Mr. Hannett: I object to that.

"Q. What did he do? A. Mr. Calkins?

"Q. Yes. A. Well, I seen Mr. Lodens first, and Mr. Lodens offered me $1,750.00.

"Q. When was that? A. It has been quite awhile.

"Q. Within the past year? A. Yes, sir. Then I went back and Mr. Calkins was there, and he was the one that offered me $1,750.00 a couple—three months ago.

"Q. Did he tell you that was all that you were entitled to? A. No, he told me the insurance company was being very generous with me, and he wouldn't offer half that much.

"Q. And he never complained, or did Mr. Loden, about paying your doctor bills? A. No, sir.

"Q. As far as you know, you could still go to the doctors and they would pay? A. Yes, sir.

" \* \* \* \* \* \* \* "

The claimant made several requested findings of fact based upon this deposition, as did the defendant insurer and the trial court made the following finding noted above but here set out in full:

"That the only conduct claimed by the Plaintiff to have led him to believe that compensation would be paid is set forth in his deposition and, briefly summarized, is that in other compensation cases involving the highway department, settlements had been made by the compensation carrier, of which claimant had knowledge, and that the Defendant-Insurer had paid certain of his doctor bills subsequent to the last

payment of compensation and consented to his being further treated."

Then the court concluded that no conduct of the employer or insurer led claimant to believe his installments of compensation would be paid.

The utmost that can be said of plaintiff's deposition, viewing it most favorably as to him, is that it raised a question of fact as to whether or not the insurance carrier's or employer's conduct reasonably led him to believe compensation would be paid, and the trial court resolved the question against him. It certainly cannot be said that the conduct asserted had the effect claimed by plaintiff as a matter of law and there is nothing in our decisions in Lucero v. White Auto Stores, Inc., 1956, 60 N.M. 266, 291 P.2d 308, or Gilbert v. E. B. Law & Son, Inc., 1955, 60 N.M. 101, 287 P.2d 992, to bring comfort to plaintiff under such contention.

It is argued in the reply brief of plaintiff that it was improper for the trial court to consider the deposition in making its ruling, but that it was bound to accept as true the statement of plaintiff in his claim that he had been led to believe by the conduct of the defendants that compensation would be paid in full. This argument is untenable because the plaintiff not only acquiesced in the submission of the deposition to the court, but requested extensive findings of fact and conclusions of law which could only have been based thereon.

The order dismissing plaintiff's claim must be affirmed and it is so ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., concur.

KIKER, J., not participating.