**Felipe SILVA, Appellant,**

v.

**SANDIA CORPORATION, a Delaware Corporation, Appellee.**

**No. 5570.**

United States Court of Appeals Tenth Circuit.

June 24, 1957.

R. F. Deacon Arledge, Albuquerque, N. Mex. (Charles Driscoll, Albuquerque, N. Mex., on the brief), for appellant.

W. A. Sloan, Albuquerque, N. Mex. (Rodey, Dickason, Mims & Akin, Albuquerque, N. Mex., on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

On July 18, 1956, Silva commenced this action against Sandia Corporation,[1]

---

1. Hereinafter called Sandia.

a Delaware corporation, to recover workman's compensation benefits under the provisions of the New Mexico Workman's Compensation Act (§§ 59–10–1 to 59–10–35, N.M.S.1953).

From a summary judgment in favor of Sandia, Silva has appealed. There is no substantial dispute as to the facts, which are disclosed by Silva's deposition and documentary exhibits.

Silva's claim arose out of a back injury he sustained on March 5, 1953, while he and another employee were attempting to lift a block of cement weighing in excess of 60 pounds onto a dolly. Immediately thereafter Silva was examined by Sandia's doctor. He later received treatment from other doctors and in December, 1953, he was in St. Joseph's Hospital at Albuquerque for a period of 12 days, where he received traction weight treatment.

He continued to work following his injury, with restricted duties. He discontinued working about December 1, 1953. On March 5, 1954, exactly one year after his injury, Sandia's doctor called him and told him to go back to work. On that day Silva was informed that Sandia's employment review committee had reviewed his case, and that the committee found that he was no longer disabled and that he would not receive any more "I" time. "I" time was a code symbol used by Sandia to indicate workman's compensation payments. It appeared on checks given to employees to whom workman's compensation was paid and was so reflected on Sandia's records. When payments were for other purposes, other symbols were used, which were generally numbers. Such other symbols indicated sick pay, vacation pay, or other special payments made by Sandia. About the same time Silva was advised by a letter from Sandia that he would receive no more "I" time and that if he continued to complain about his back he would be discharged. It clearly appears from the record that Silva knew that "I" time meant workman's compensation benefits. Thereafter, Silva worked regularly during the remainder of 1954

and irregularly during 1955. Sandia's records show that it ceased paying "I" time to Silva on March 5, 1954, and paid Silva no "I" time thereafter. Silva did not deny that he received no "I" time after March 5, 1954.

Silva did not work for Sandia after February, 1956, and sick leave and vacation payments which he had been receiving from time to time ceased on April 21, 1956.

On April 25, 1956, Sandia wrote a letter to Silva advising him that it desired to make a compromise settlement of his claim for a job-incurred injury, and on April 30, 1956, it advised him that it would pay as a settlement of his claim $1,500. That offer was rejected and this action followed.

Sandia's motion for summary judgment was based solely on the proposition that Silva's claim was barred by the provisions of § 59–10–13, N.M.S.1953, which provides in part:

"* * * In event of the failure or refusal of any employer to pay any workman entitled thereto any instalment of the compensation to which such workman may be entitled under the terms hereof, such workman shall be entitled to enforce the payment thereof by filing [his] * * * claim * * * not later than one (1) year after such refusal or failure of the employer so to pay the same. * * *"

Sandia asserts that Silva filed his claim on July 18, 1956, more than one year after March 5, 1954, the date when Sandia ceased to pay workman's compensation benefits, and was therefore barred.

On the contrary, Silva asserts that the one year statute of limitations was tolled by the provisions of § 59–10–14, N.M.S. 1953, which in part provides:

"The failure of any person entitled to compensation * * * to * * * bring suit within the time fixed by said act shall not deprive such person or persons of the right to such compensation where such failure was

caused in whole or in part by the conduct of the employer or insurer which would reasonably lead the person or persons entitled to compensation to believe the compensation would be paid."

Silva urges that Sandia led him reasonably to believe that he was going to continue to receive workman's compensation pay up to at least June 20, 1956, by keeping him on the payroll until April 21, 1956, and by reconsidering his case in April, 1956, and again in June, 1956, and that the evidence with respect to those matters raised an issue of fact which he was entitled to have submitted to a jury. In support of his contention he cites Garcia v. New Mexico State Highway Department, 61 N.M. 156, 296 P.2d 759. A careful examination of that case leads us to conclude that it does not support Silva's contention, under the facts presented on this record.

■ It is well settled that a motion for summary judgment should be granted when there is no genuine issue as to any material fact.[2]

Since Silva's injury occurred on March 5, 1953, and the payment of workman's compensation benefits ceased on March 5, 1954, and his action was not filed until July 18, 1956, the only question presented is whether there was a genuine issue of fact as to whether the one year limitation was tolled by Sandia's conduct.

■ The conduct of an employer which will toll the period of limitation must be such as to reasonably lead the person or persons entitled to compensation to believe the compensation would be paid.

■ It was established by uncontroverted evidence that at least on two occasions about March 5, 1954, Sandia expressly informed Silva that he would not receive any more workman's compensation benefits. It is true that Silva worked for Sandia after March 5, 1954,

up to April 21, 1956, sometimes regularly and sometimes irregularly and that from time to time he received sick leave and vacation pay, but at no time during that period did he receive any workman's compensation benefits and he knew that fact. It seems clear to us that continued employment under those circumstances, as a matter of law, did not constitute conduct which would reasonably lead Silva to believe that he would be paid workman's compensation benefits. Indeed, the normal mental reaction from Sandia's conduct from March 5, 1954, to April 25, 1956, would have been that Sandia would not, rather than it would, pay additional workman's compensation benefits.

The fact that Sandia communicated with Silva with respect to a compromise settlement on April 25, 1956, and April 30, 1956, did not serve to revive his claim for workman's compensation benefits, which theretofore became barred.[3] Neither could it toll the statute with respect to a claim that had already become barred by limitation.

The judgment is affirmed.

2. SMS Manufacturing Co., Inc., v. U. S.-Mengel Plywoods, Inc., 10 Cir., 219 F.2d 606, 608; Whelan v. New Mexico Western Oil & Gas Co., 10 Cir., 226 F.2d 156; Brodrick v. Gore, 10 Cir., 224 F.2d 892, 897; Fife v. Barnard, 10 Cir., 186 F.2d 655.

3. Lucero v. White Auto Stores, 60 N.M. 266, 291 P.2d 308, 312.