IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-013

Filing Date: April 11, 2013

Docket No. 33, 372

CHERYL SCHULTZ for
KEVIN SCHULTZ (deceased),

　　　　Worker-Petitioner,

v.

POJOAQUE TRIBAL POLICE DEPARTMENT, and
NEW MEXICO MUTUAL CASUALTY COMPANY,

　　　　Employer-Insurer-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Helen L. Stirling, Workers' Compensation Judge

Academy Compensation Clinic, P.C.
George Wright Weeth
Albuquerque, NM

for Petitioner

Riley, Shane & Keller, P.A.
Richard J. Shane
Tiffany L. Sanchez
Kristin J. Dalton
Albuquerque, NM

for Respondents

OPINION

BOSSON, Justice.

{1}     On August 17, 2002, Pojoaque Tribal Police Officer Kevin Schultz drowned while rescuing a twelve-year-old boy from the Rio Grande near Pilar, New Mexico.  On the day of the accident, Schultz had taken the day off from work to chaperone a group of children

1

from his church on a recreational outing. This case arose when Schultz's widow, Cheryl, filed a claim for workers' compensation benefits resulting from her husband's death, but only *after* the statute of limitations had expired.

**{2}** Notwithstanding the late filing, Mrs. Schultz contends that the conduct of the Pojoaque Tribal Police Department (police department or employer) caused her to file after the deadline and, thus, we should consider her complaint timely filed pursuant to NMSA 1978, Section 52-1-36 (1937) (as amended through 1989) of the Workers' Compensation Act (the Act), entitled "Effect of failure of worker to file claim by reason of conduct of employer." This particular statute goes to the heart of Mrs. Schultz's appeal.

**{3}** Both the Workers' Compensation Judge (WCJ) and the Court of Appeals decided that Mrs. Schultz's complaint was not timely filed. For the reasons that follow, we reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

**BACKGROUND**

**{4}** The Act provides a one-year statutory period within which to file a claim for workers' compensation benefits following the death of a worker. NMSA 1978, § 52-1-31(B) (1987). When the filing delay is caused, "in whole or in part," by the employer's conduct, then the delay "shall not deprive such person of the right to compensation" under the Act. *See* § 52-1-36. The statute provides:

> The failure of any person entitled to compensation under the Workers' Compensation Act [Chapter 52, Article 1 NMSA 1978] to give any notice or file any claim within the time fixed by the Workers' Compensation Act *shall not deprive such person of the right to compensation where the failure was caused in whole or in part by the conduct of the employer or insurer which reasonably led the person entitled to compensation to believe the compensation would be paid*.

Section 52-1-36 (emphasis added).

**{5}** Following Schultz's death, members of the police department assured Mrs. Schultz that they would take care of everything for her. Within two months of Schultz's death, the employer filed the necessary paperwork for federal death benefits. However, it was not until a meeting on July 28, 2003, between Mrs. Schultz, her financial advisor, and John Garcia, Chief of the Pojoaque Tribal Police Department, that it became clear that Mrs. Schultz might be entitled to workers' compensation benefits. At this meeting, Chief Garcia told Mrs. Schultz that he would "take care of getting the workers' compensation paperwork done." To be clear, Chief Garcia testified that he did not remember telling Mrs. Schultz this, but acknowledged that "if she said that, it must be correct." Thus, we accept this representation by the Chief of Police as unrebutted for purposes of this opinion.

2

**{6}** Despite this representation, the employer did not file a workers' compensation claim on Mrs. Schultz's behalf. Once Mrs. Schultz realized that the employer was not going to file her claim, she filed a pro se complaint that same day, October 1, 2003—some forty-five days after the one-year statute of limitations had run. Although it was filed late, Mrs. Schultz's complaint proceeded to an informal mediation at the Workers' Compensation Administration (the WCA). *See* NMSA 1978, § 52-5-5(C) (1993) (describing that "every claim shall be evaluated by the director [of the WCA] or his designee, who shall then contact all parties and attempt to informally resolve the dispute").

**{7}** The mediator issued a recommended resolution on December 19, 2003, recommending that the complaint be dismissed without prejudice so that Mrs. Schultz could retain legal counsel to assist her during settlement negotiations. According to the mediator, Mrs. Schultz could "immediately file an amended complaint with the accompanying documents required by this Administration." Neither party filed an acceptance nor a rejection of this resolution. The WCA generated a Notice of Completion on February 13, 2004.

**{8}** After retaining legal counsel, Mrs. Schultz filed a second complaint with the WCA on June 18, 2004, which specifically requested modification of the first recommended resolution because she had retained an attorney. A second mediation occurred, after which the employer rejected the mediator's recommended resolution of settlement with Mrs. Schultz for a cash sum. After extensive discovery, the case proceeded to trial in 2007 before a WCJ.

**{9}** Following three days of trial, the WCJ entered findings of fact, conclusions of law, and a compensation order. The WCJ decided that Mrs. Schultz was not entitled to workers' compensation benefits on two grounds. The WCJ determined (1) that the statute of limitations barred Mrs. Schultz's claim, and (2) that even if the statute of limitations were not a bar, her husband was not acting within the course and scope of his employment when he died.

**{10}** Mrs. Schultz appealed. The Court of Appeals initially dismissed her appeal as untimely. *See Schultz v. Pojoaque Tribal Police Dep't*, No. 28,508, slip op. at 2 (N.M. Ct. App. Sept. 23, 2008). We reversed and remanded for the Court of Appeals to decide the merits of her appeal. *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2010-NMSC-034, ¶ 1, 148 N.M. 692, 242 P.3d 259.

**{11}** On remand, the Court of Appeals affirmed the WCJ's decision, holding that the statute of limitations barred Mrs. Schultz's claim. *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2012-NMCA-015, ¶ 33, 269 P.3d 14. Finding this issue dispositive, the Court of Appeals did not address whether her husband died within the course and scope of employment. *Id.* ¶ 7. We granted certiorari, *Schultz v. Pojoaque Tribal Police Dep't*, 2012-NMCERT-001, 291 P.3d 599, to determine how Section 52-1-36 impacts a workers' compensation claim once the statute of limitations has expired.

**STANDARD OF REVIEW**

**{12}** This Court has previously held that "[i]n reviewing a WCJ's interpretation of statutory requirements, we apply a de novo standard of review." *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341.

**DISCUSSION**

**Application of Statutory Tolling**

**{13}** The Court of Appeals assumed without deciding that the employer's conduct caused Mrs. Schultz to file an untimely claim, thereby implicating Section 52-1-36. *Schultz*, 2012-NMCA-015, ¶ 25. The Court then proceeded to analyze the effect of Section 52-1-36 on this case, concluding that the statute was of no help to Mrs. Schultz. *Schultz*, 2012-NMCA-015, ¶ 26. For purposes of our own analysis, we track the issues as stated by the Court of Appeals. We look first to the effect of Section 52-1-36 on this case, assuming it applies, and then we will examine the record to see whether the failure to timely file "was caused in whole or in part by the conduct of the employer." *Id.*

**{14}** In examining the effect of Section 52-1-36, the Court of Appeals regarded it as a tolling statute, relying on prior opinions of our two courts. *See Schultz*, 2012-NMCA-015, ¶¶ 25-26 ("Section 52-1-36 permits tolling when an employer's conduct reasonably leads the worker to believe that compensation will be paid."). Whether Section 52-1-36 is, in fact, a tolling statute is significant, because as the Court of Appeals described in *Schultz*, 2012-NMCA-015, ¶¶ 25-26, tolling extends a statute of limitations for only a limited period of time.

> Tolling [is] [a]n interruption in the time a limitations period runs. Tolling interrupts the time of a period for the limitations of action under a statute of limitations, effectively adding on time to commence an action after the moment when the statute would otherwise have barred an action. . . . Tolling persists as long as the cause of the tolling persists, and when that cause ends, the calculation of time under the statute commences again.

1 *The Wolters Kluwer, Bouvier Law Dictionary* 1645 (Desk Ed. 2012). This Court has previously stated that "a statute of limitations may be tolled for a period of time, and then recommence in such a way that the remainder of the period remaining under the statute is extended by the period tolled." *State v. Sanchez*, 109 N.M. 313, 316, 785 P.2d 224, 227 (1989); *see also State v. Hill*, 2008-NMCA-117, ¶ 9, 144 N.M. 775, 192 P.3d 770 (defining a "tolling statute" as "a law that interrupts the running of a statute of limitations in certain situations" (quoting *Black's Law Dictionary* 1525 (8th ed. 2004) (internal quotation marks and alteration omitted))).

**{15}** An example may clarify the analysis. Assume that an employee is misled sixty days

4

before the statute of limitations is to run. Tolling would suspend the effect of the limitations statute until the employee learns or should learn the truth. If that were to occur one month after the statute had run, the limitations period would be tolled until that time, and the employee would have sixty days thereafter in which to file, the time left in the limitations period when the misrepresentation occurred, but not a day longer.

**{16}** Because it interpreted Section 52-1-36 to function as a tolling statute, the Court of Appeals applied a strict tolling analysis to Mrs. Schultz's late filing. *Schultz*, 2012-NMCA-015, ¶ 26. The Court focused on the fateful meeting with Chief Garcia on July 28, 2003, twenty-one days before the statute of limitations was to expire. *Id.* The Court of Appeals assumed without deciding that on this date, the employer's conduct could reasonably have led Mrs. Schultz to believe that her claim would be filed, thereby giving her a "false sense of security." *Id.* ¶¶ 25-26.

**{17}** It is this conduct that implicates Section 52-1-36. If the statute functions as a tolling statute, then from July 28, 2003 onwards, Mrs. Schultz was operating under the assumption that the employer was going to file her claim. On October 1, 2003, she realized that the employer had *not* filed a claim. During this period, from July 28, 2003 until October 1, 2003, just over two months, the limitations period would be tolled. On October 1, 2003, the cause of the tolling—the employer's conduct reasonably leading Mrs. Schultz to believe that the workers' compensation claim would be filed—ceased to exist. At this point, under a strict tolling analysis, the limitations statute began running again, giving her the originally tolled twenty-one days to file the workers' compensation claim on her own.

**{18}** Of course, in this case Mrs. Schultz did not need the full twenty-one days; she filed her first workers' compensation complaint the same day she realized the employer had not filed, October 1, 2003. As a result, the statute of limitations stopped running when the complaint was filed. *See Bracken v. Yates Petroleum Corp.*, 107 N.M. 463, 466, 760 P.2d 155, 158 (1988) (describing how the statute of limitations is tolled during the pendency of an action). Following the statutorily required mediation, the mediator recommended dismissal without prejudice on December 19, 2003, stating in part:

> It is the [m]ediator's evaluation, however, that under the circumstances of this case, [Mrs. Schultz's] attorney should be present during settlement negotiations for her consultation. Therefore, the [m]ediator recommends that the complaint filed on October 22, 2003,[1] be *dismissed without prejudice*. [Mrs. Schultz] may immediately file an amended complaint with the accompanying documents required by this Administration.

---

[1] The record indicates that there was another complaint filed on October 22, 2003. It is not clear why this second complaint was filed. This complaint is the same as the one filed on October 1, 2003. For purposes of this appeal, all parties have treated October 1, 2003, as the date Mrs. Schultz first filed her workers' compensation complaint.

(Emphasis added.)

**{19}** The dismissal without prejudice complicated the analysis for both the WCJ and the Court of Appeals. Because Mrs. Schultz did not file a rejection of the first recommended resolution nor raise the effect of the dismissal without prejudice of the first complaint, the WCJ found that "[w]hen a Complaint is filed and dismissed without prejudice, and the filing date is not preserved in the document doing the dismissal, it's as if the Complaint has never been filed at all." *Schultz*, 2012-NMCA-015, ¶¶ 15-16.

**{20}** According to the Court of Appeals, the statute of limitations started running again once the mediator dismissed the case without prejudice, or at the latest, when the WCA finally closed the file on February 13, 2004. *Id.* At that point, under the Court of Appeals' view of tolling, Mrs. Schultz had no more than twenty-one days—the original tolling period—to file another complaint with the WCA. *Id.* Her second complaint, filed on June 18, 2004, fell well outside this time frame. *See id.* ¶ 8. Thus, the Court of Appeals regarded the second complaint as untimely, notwithstanding Section 52-1-36. *Schultz*, 2012-NMCA-015, ¶ 26.

**Estoppel**

**{21}** Mrs. Schultz asks us to construe Section 52-1-36, not as a strict tolling statute, but as an estoppel statute. Equitable estoppel "applies where, as a result of the conduct of a party upon which another person has in good faith relied to his or her detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights that might have otherwise existed." 28 Am. Jur. 2d *Estoppel and Waiver* § 27 (2011).

**{22}** Mrs. Schultz argues that *Molinar v. City of Carlsbad*, 105 N.M. 628, 735 P.2d 1134 (1987), supports her position that Section 52-1-36 "is actually a codification of the principle of equitable estoppel." In *Molinar*, which concerns retirement benefits rather than workers' compensation, we determined that a city was estopped from raising the statute of limitations as a defense when the actions of its former attorney assured city employees that their case would be settled satisfactorily without the need for litigation. *Id.* at 631, 735 P.2d at 1137. We cited Section 52-1-36 as an example of a statute which codifies that "the conduct of a party may estop it from raising the statute of limitations as a defense." *Molinar*, 105 N.M. at 631, 735 P.2d at 1137.

**{23}** Unlike tolling, equitable estoppel does not appear to confine its relief to a carefully crafted number of days. It is more a matter of what is fair under the circumstances, which is why Mrs. Schultz prefers that doctrine in this case. *See Anderson v. Cox*, 977 F. Supp. 413, 416 (W.D. Va. 1997) ("The concept of equitable estoppel is based on principles of fairness."); *see also* 28 Am. Jur. 2d, *supra* § 31 ("[T]he doctrine of equitable estoppel may . . . be invoked to prevent a defendant from relying on the statute of limitations."). However, we do not see the dicta in *Molinar* as deciding the question one way or another. Clearly, that case did not determine whether Section 52-1-36 is a tolling statute or one based on equitable

6

estoppel; the statute was cited only as an illustration. For the following reasons, based on its history and evolution, we conclude that Section 52-1-36 established its own special relief, untethered to either doctrine.

**Section 52-1-36**

**{24}**    Section 52-1-36 has a long history in our jurisprudence. Our Legislature first enacted the statute's predecessor in 1937 in response to a 1931 decision of this Court, *Taylor v. American Employers' Insurance Co. of Boston, Massachusetts*. 35 N.M. 544, 3 P.2d 76 (1931), *superseded by statute as stated in Lucero v. White Auto Stores, Inc.*, 60 N.M. 266, 268, 291 P.2d 308, 309 (1955) (recognizing that the Legislature enacted this statute following the *Taylor* decision); *see also* 1937 N.M. Laws, ch. 92, § 13.

**{25}**    In *Taylor*, this Court took a strict view of the statute of limitations within the Act as it existed at the time. *See* 35 N.M. at 550, 3 P.2d at 78. In that case, an injured worker asserted that the employer's insurer led him to believe that workers' compensation would be paid. *Id.* at 545, 3 P.2d at 76. The worker relied on these representations and failed to file a workers' compensation complaint within the applicable limitations period. *Id*. This Court strictly applied the statute of limitations, finding that waiver and estoppel could not save the worker's claim, because the statute at issue was not a mere limitation on the remedy, but was a "limitation upon the right of action" that is "conditioned upon its enforcement within a prescribed period." *Id.* at 549-50, 3 P.2d at 78 (internal quotation marks and citation omitted); *see also Lucero,* 60 N.M. at 268, 291 P.2d at 309 (describing the holding of *Taylor*).

**{26}**    Six years later, in response to our holding in *Taylor*, the Legislature enacted what is codified today as Section 52-1-36. *See Knippel v. N. Commc'ns, Inc.*, 97 N.M. 401, 405, 640 P.2d 507, 511 (Ct. App. 1982) (noting that "[p]rior to the enactment of [Section] 52-1-36, early decisions in New Mexico declined to recognize assertions of equitable estoppel or waiver as a basis for tolling the time constraints imposed by [Section] 52-1-31," and citing *Taylor*). Except for several very minor amendments, the language enacted in 1937 remains in force today. *Compare* 1937 N.M. Laws, ch. 92, § 13 (enacting what is now Section 52-1-36), *with* § 52-1-36 (containing substantively identical language).

**{27}**    Over the years, courts have described Section 52-1-36 as a tolling statute. *See Silva v. Sandia Corp*., 246 F.2d 758, 760 (10th Cir. 1957) (considering employee's argument that employer's conduct tolled the statute of limitations under previous codification of Section 52-1-36); *Stasey v. Stasey*, 77 N.M. 436, 439-40, 423 P.2d 869, 871-72 (1967) (recognizing that "[t]his section of our statutes provides the only reason or excuse for tolling or extending the time within which suit must be filed" under the Act); *Lucero*, 60 N.M. at 269, 291 P.2d at 310 (determining whether what is now codified as Section 52-1-36 tolled the one-year limitations period in which to file a workers' compensation complaint); *Hutcherson v. Dawn Trucking* Co., 107 N.M. 358, 360, 758 P.2d 308, 310 (Ct. App. 1988) (recognizing that Section 52-1-36 functions as a tolling statute); *Howie v. Stevens*, 102 N.M. 300, 305, 694

7

P.2d 1365, 1370 (Ct. App. 1984) (citing Section 52-1-36 and stating that "[m]isrepresentation that the employee will receive benefits remains the only reason the workmen's compensation limitation period is tolled"); *Ryan v. Bruenger M. Trucking*, 100 N.M. 15, 17, 665 P.2d 277, 279 (Ct. App. 1983) (describing Section 52-1-36 as containing a tolling provision); *Saenz v. McCormick Constr. Co.*, 95 N.M. 609, 610, 624 P.2d 551, 552 (Ct. App. 1981) (describing Section 52-1-36 as a "tolling provision"), *holding modified on other grounds by Ryan*, 100 N.M. at 17, 665 P.2d at 279; *Owens v. Eddie Lu's Fine Apparel*, 95 N.M. 176, 178, 619 P.2d 852, 854 (Ct. App. 1980) (stating that "52-1-36 . . . is a tolling provision"), *abrogation recognized on other grounds in Schultz*, 2012-NMCA-015, ¶ 26.

**{28}** Although our courts have used the term "tolling" to describe Section 52-1-36, this Court's seminal opinion interpreted Section 52-1-36 differently—without the limitations of tolling. In 1943, in *Elsea v. Broome Furniture Co.*, this Court construed NMSA 1941, Section 57-914, the exact language that was codified in 1937. 47 N.M. 356, 366-67, 143 P.2d 572, 578 (1943); *compare* NMSA 1941, § 57-914, *with* 1937 N.M. Laws, ch. 92, § 13 (containing identical language).

**{29}** In that case, a worker was injured on three separate occasions, from February to June 1940. *Id*. at 362-63, 143 P.2d at 575-76. Following his third injury, the worker attempted to obtain workers' compensation benefits in August of 1940. *Id.* at 363, 143 P.2d at 576. After speaking with an insurance adjuster, the worker learned that he had a "legitimate claim" for workers' compensation and "it was only a matter of time until it would be paid." *Id.* at 364, 143 P.2d at 576. In the intervening months, the worker contacted the insurance company to inquire about his claim and at no time was he told that his claim would not be paid. *Id.* at 364, 143 P.2d at 576. However, on October 27, 1941, the insurance company formally rejected the worker's claim. *Id.* at 364, 143 P.2d at 576-77. Seven months later, almost two years after his initial efforts at collection, the worker filed suit. *Id.* at 364, 143 P.2d at 577.

**{30}** The worker argued under the precursor to Section 52-1-36 that his failure to file a timely lawsuit "was caused in whole or in part by the conduct of the employer or insurer which would reasonably lead the person entitled to compensation to believe the compensation would be paid." *Elsea*, 47 N.M. at 366-67, 143 P.2d at 578 (internal quotation marks, alteration and citation omitted). The *Elsea* court refused to disturb the jury verdict in the worker's favor, which found that the worker had been "misled 'in whole or in part' by the conduct of the employer or insurer." *Id.* at 368, 143 P.2d at 579. In reaching this conclusion, the *Elsea* court reasoned that "[t]he statute provides that it is only necessary to connect claimant's delay 'in whole or in part' with the conduct of the employer to excuse a failure *to file claim or a suit* within the time prescribed." *Id.* (emphasis added). This Court further stated, "The statute does not go so far as to require actual waiver by agreement or conduct which would meet the technical rules supporting estoppel. It only requires proof of such conduct as would 'in whole or in part' reasonably lead claimant to believe compensation would be paid." *Id.* at 368-69, 143 P.2d at 579.

8

**{31}**     Aside from avoiding "technical rules" in assessing the impact of employer's conduct upon the employee, the *Elsea* court also declined to impose a rigid time limit within which the employee must file suit.  In holding that the worker's suit was timely filed, the *Elsea* court was "not disposed to fix any particular time short of one year after [denial of the claim] within which the action must have been filed."  *Id.* at 369, 143 P.2d at 580.

**{32}**     In *Elsea,* this Court noted that various authorities had different approaches to determining how much time was appropriate for the worker to re-file a claim once the insurance company denied it.  *Id.* at 369-70, 143 P.2d at 580.  Specifically, the *Elsea* court noted that "the extended period under such circumstances should be only a reasonable time rather than a whole new statutory period."  *Id.* at 370, 143 P.2d at 580 (internal quotation marks and citation omitted).  Elaborating on what a reasonable time could mean, the *Elsea* court stated that "the adoption a reasonable time [approach] . . . does not mean that the statutory period of limitations might not itself be treated as a reasonable time," and in contrast, that "[m]any cases hold that the time to be allowed is to be defined as a 'reasonable time', [sic] but which should not exceed that of the original limitation period."  *Id.*  The *Elsea* court did not decide which approach—an entirely new statutory period or only a reasonable amount of time not exceeding the original limitations period—was the better way to proceed.  *Id.*

**{33}**     In the present appeal, our Court of Appeals addressed *Elsea* only in the context of when the one-year limitations began to run.  *Schultz*, 2012-NMCA-015, ¶¶ 11-12.  Apparently Mrs. Schultz argued to the Court of Appeals that *Elsea* supported her contention that the statute of limitations began to run on October 1, 2003, the day she filed her complaint, not the day Schultz died. *Schultz*, 2012-NMCA-015, ¶ 11.  The Court of Appeals correctly stated that it saw "nothing in *Elsea* suggesting that the limitations period begins to run at a time other than the date of the worker's death in a case involving an alleged work-related death." *Schultz*, 2012-NMCA-015, ¶ 13.  Mrs. Schultz does not make that argument to this Court, but asserts instead that the Court of Appeals misunderstood her *Elsea* argument.  Regardless, we view the holding in *Elsea* more broadly than did our Court of Appeals, and it informs our interpretation of Section 52-1-36.

**{34}**     We find the plain language of Section 52-1-36 to be clear. *Elsea,* though admittedly somewhat cryptic, supports a charitable, non-parsimonious reading of that statute in favor of deciding a worker's claim on its merits.  We observe that Section 52-1-36 has changed very little over time, despite the Act's major evolution in other ways.  *Compare* NMSA 1978, § 52-1-47 (1990) (amended nine times), *with* § 52-1-36 (amended three times).  Whatever the Legislature meant in drafting what is now Section 52-1-36, *Elsea*'s interpretation of it has been good law for close to seventy years, and in that time, the Legislature has never modified the statute to mandate a stricter approach to calculating the limitations period.  Nothing in Section 52-1-36 of the Act specifies that strict tolling is the only way to apply this section to an untimely workers' compensation complaint.  In fact, Section 52-1-36 never uses the word "tolling."

9

**{35}** Significantly, when the Legislature wanted to make clear elsewhere in the Act that tolling was the appropriate remedy, it stated so in express language. For example, NMSA 1978, Section 52-1-31(A) (1987), provides that the worker has a duty to file a claim within one year for any workers' compensation payment or installment that an employer or insurer fails or refuses to pay. Section 52-1-31(A), however, allows the statutory period to be tolled if the worker remains employed where the injury occurred. *Id.* ("[The] one-year period of limitations shall be *tolled* during the time a worker remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one year." (emphasis added)).

**{36}** We have previously said that "when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." *State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659. Without necessarily applying that principle of statutory construction to this specific instance, its reasoning cautions circumspection; it affords us additional guidance as we consider whether Section 52-1-36 should be confined by the limits of tolling or by any other "technical rule." *See Elsea*, 47 N.M. at 368-69, 143 P.2d at 579.

**{37}** Admittedly, our prior case law has leaned in a different direction, guiding the Court of Appeals in this case to apply Section 52-1-36 as a tolling statute. But the fact that prior opinions have somehow overlooked or misconstrued *Elsea*'s meaning does not mean that we should compound the error. Therefore, we hold that Section 52-1-36 should no longer be confined by the limits of tolling.[2]

**{38}** Accordingly, consistent with *Elsea* and the language of Section 52-1-36, if an employee entitled to workers' compensation benefits fails to file a complaint or a claim within the limitation period because the conduct of the employer or insurer reasonably led the employee to believe compensation would be paid, then the employee has a reasonable time thereafter within which to file. As we stated in *Elsea*, we are not disposed to fix any particular time within which the worker must file, as long as the failure to file is caused in whole or in part by the conduct of the employer or the insurer. *See Elsea*, 47 N.M. at 369,

---

[2] We expressly overrule the portions of those cases which describe or apply Section 52-1-36 as a tolling statute. *See Stasey v. Stasey*, 77 N.M. 436, 423 P.2d 869 (1967); *Lucero v. White Auto Stores, Inc.*, 60 N.M. 266, 268, 291 P.2d 308, 309 (1955); *Hutcherson v. Dawn Trucking* Co., 107 N.M. 358, 360, 758 P.2d 308, 310 (Ct. App. 1988); *Howie v. Stevens*, 102 N.M. 300, 305, 694 P.2d 1365, 1370 (Ct. App. 1984); *Ryan v. Bruenger M. Trucking*, 100 N.M. 15, 17, 665 P.2d 277, 279 (Ct. App. 1983); *Knippel v. N. Commc'ns, Inc.*, 97 N.M. 401, 405, 640 P.2d 507, 511 (Ct. App. 1982); *Saenz v. McCormick Constr. Co.*, 95 N.M. 609, 610, 624 P.2d 551, 552 (Ct. App. 1981), *holding modified on other grounds by Ryan*, 100 N.M. at 17, 665 P.2d at 279; *Owens v. Eddie Lu's Fine Apparel*, 95 N.M. 176, 178, 619 P.2d 852, 854 (Ct. App. 1980), *abrogation recognized on other grounds in Schultz*, 2012-NMCA-015, ¶ 26.

143 P.2d at 570 (refusing to set a rigid deadline for filing a complaint).

**{39}** Having settled on the proper application of Section 52-1-36, we now determine (1) whether the conduct on the part of this particular employer, in whole or in part, reasonably led Mrs. Schultz to believe that workers' compensation benefits would be paid, and if so, (2) whether Mrs. Schultz's workers' compensation complaint was filed within a reasonable time thereafter.

### The Employer's Conduct Reasonably Led Mrs. Schultz to Believe Workers' Compensation Claim Would be Filed and Benefits Would be Paid

**{40}** The Court of Appeals assumed without deciding that the conduct of the employer following the July 28, 2003, meeting with the Chief of Police reasonably led Mrs. Schultz to believe compensation would be paid. *See Schultz*, 2012-NMCA-015, ¶ 26. In order to demonstrate that the conduct on the part of the employer caused a failure to file a workers' compensation complaint, the worker must show, by reasonable inference, that he believed compensation would be paid, the belief was reasonable, and the belief was based, in whole or in part, on the conduct of the employer. *See Hutcherson*, 107 N.M. at 360, 758 P.2d at 310 (listing elements in the context of summary judgment).

**{41}** From the night Schultz died, his employer assured his widow that it would "take care of everything for her." At this early stage, the employer did not state specifically that it would file a workers' compensation claim, and perhaps, as the employer stated, no one was contemplating workers' compensation benefits at that early point in time.

**{42}** Two months after Schultz's death, the employer submitted the paperwork necessary to make Mrs. Schultz eligible for federal death benefits, which she did in fact receive. On July 17, 2003, Mrs. Schultz was notified of her benefits under the federal Public Safety Officers' Death Benefits statute, 42 U.S.C. § 3796 (2006), which, as the award letter indicated, recognizes "the selfless dedication of federal, state and local public safety officers killed in the line of duty."

**{43}** These events provide context for the July 28, 2003, meeting with Chief Garcia. At this meeting, all participants became aware that Mrs. Schultz might be entitled to workers' compensation benefits. The Chief testified about his surprise at hearing this, because it had never occurred to him that Mrs. Schultz might be entitled to workers' compensation. Nevertheless, Chief Garcia promised to prepare the necessary paperwork for filing a worker's compensation claim.

**{44}** Both Mrs. Schultz and her financial advisor testified, without contradiction, that they left this meeting believing that the employer would be filing the necessary papers. Shortly after this meeting, Mrs. Schultz visited Chief Garcia to inquire about the status of her worker's compensation complaint, and he told her to be patient because "these things take time." Consistent with this conduct, the employer wrote a letter to Mrs. Schultz on October

11

21, 2003, stating that "[y]our husband, Kevin Schultz, died in the line of duty.  The Pueblo of Pojoaque will do anything necessary for you to receive survivor's benefits, workmen's compensation or any other benefits available to you and your grieving family."

**{45}**    These representations, fully documented in the record below, support Mrs. Schultz's belief that her husband's compensation would be paid, or at the very least, that she could rely on the employer to process her claim and file the necessary paperwork toward that same end. We recognize that Section 52-1-36 speaks in terms of causing the employee to believe that benefits would be *paid*.  Under the circumstances of this case, we conclude the employer's promises were the functional equivalent of saying that it would do everything within its power to see that benefits were paid.  Mrs. Schultz could reasonably rely on those representations within the meaning of Section 52-1-36.

**{46}**    The employer's conduct, therefore, implicates the relief called for in Section 52-1-36, and allowed Mrs. Schultz a reasonable period of time within which to file on her own.  We now turn to the reasonableness of Mrs. Schultz's conduct.

**Mrs. Schultz Acted Within a Reasonable Period of Time and Her Filing Was Timely**

**{47}**    Mrs. Schultz filed her pro se workers' compensation complaint on October 1, 2003. The statute of limitations on her claim expired on August 17, 2003.  Although both the Court of Appeals and the WCJ focused on the prejudicial effect of the first mediator's dismissal without prejudice, that focus was misplaced. Mrs. Schultz's first complaint, filed on October 1, 2003, was clearly within a reasonable time after the statute of limitations expired—even under the now-discredited tolling approach.  The WCA treated this complaint as timely and proceeded to mediation.

**{48}**    The WCA mediator's first recommended resolution made no mention of the statute of limitations.  In fact, it appears that the dismissal without prejudice of the first recommended resolution was intended to assist Mrs. Schultz; it was intended to provide her time to consult with an attorney before entering settlement negotiations. *See Schultz*, 2012-NMCA-015, ¶ 48 (Sutin, J., specially concurring) ("Interestingly, the mediator presumably did not think that Mrs. Schultz's October 1, 2003, complaint was untimely filed, given that he did not recommend dismissal based on the timeliness of the complaint (which dismissal would have been a dismissal with prejudice.)").

**{49}**    Additionally, when Mrs. Schultz filed her second worker's compensation complaint on June 18, 2004, the WCA gave the complaint the same case number as the October 1, 2003, complaint and labeled it with a 'Reopened' date stamp.  When a second mediator considered the issue of the statute of limitations later in 2004, he specifically stated that "[i]t is the [m]ediator's evaluation that if this case proceeds to trial, a Workers' Compensation Judge will probably decide this complaint is not barred by the statute of limitations pursuant to § 52-1-36."  Therefore, it is fair to conclude that the WCA considered the second complaint as a continuation or a mere reopening of the first complaint, and not as an entirely

12

new case. Importantly, there is no dispute that the first complaint, filed on October 1, 2003, was timely.

**{50}** The Court of Appeals placed great reliance on the mediator's words, "dismissal without prejudice," concluding that Mrs. Schultz had to start all over within the constraints of the old limitation period. We conclude that the Court of Appeals misread what occurred below. We question whether a dismissal without prejudice from a mediator, following an informal mediation process conducted at the WCA, was intended to have the harsh consequences the Court of Appeals gave to this case. Legally, "[t]he words 'without prejudice' when used in an order or decree generally indicate that there has been no resolution of the controversy on its merits and leave the issues in litigation open to another suit as if no action had ever been brought." *Bralley v. City of Albuquerque*, 102 N.M. 715, 719, 699 P.2d 646, 650 (Ct. App. 1985).

**{51}** Yet, mediations at the WCA are "informal meetings with no transcript of the proceedings" where "[n]o motions practice shall be allowed." 11.4.4.10(C)(7)(c) NMAC (12/31/12). The mediator's duties include "mak[ing] recommendations on all issues remaining in dispute" and issuing a recommended resolution. 11.4.4.10(C)(6)(b) & (d) NMAC. Unlike a court, it does not appear that a mediator has the authority to dismiss a case without prejudice, as a judge could. *See* 11.4.4.10(C)(6)(a) & (c) NMAC (describing the purposes of the mediation conference and duties of the mediator, stating that the parties shall come together, "attempt to settle disputed issues by discussing the facts . . . and by suggesting compromises or settlements," and also that the mediator could "state an opinion of the strength of any argument or position, and the possible results if the complaint is tried by a judge").

**{52}** No one at the WCA entered a formal order dismissing the case without prejudice, although the recommended resolution did become binding on the parties after thirty days when neither party formally rejected or accepted the resolution. *See* 11.4.4.10(D)(5)(a) NMAC ("Failure to timely accept or reject the recommended resolution shall conclusively bind the parties to the recommended resolution."). It appears that the use of the term "dismissal without prejudice" had consequences beyond what the mediator intended. As previously stated, the mediator was trying to assist Mrs. Schultz, who came to the first mediation with only her pastor, not her attorney. *See Schultz*, 2012-NMCA-015, ¶ 49 (Sutin, J., specially concurring) (recognizing the harsh result of the dismissal without prejudice in this case and wondering "why the workers' compensation process could not . . . have accommodated [Mrs. Schultz] by, instead of a dismissal without prejudice and apparently without any explanation as to the effect of the dismissal, setting a definitive date for the continuation of the mediation"). Considering all the circumstances, we conclude that neither the WCA nor the mediator intended an outright dismissal or that a second complaint would have to begin anew to satisfy the limitation period.

**{53}** Moreover, even if we were to consider the second complaint as completely independent of the first, we are satisfied that it was filed within a reasonable period of time

as Section 52-1-36 envisions.  In *Elsea,* the worker took an additional seven months to file his complaint.  We fail to see why a similar period of time would be unreasonable in this case.  47 N.M. at 364, 143 P.2d at 576-77.

**CONCLUSION**

**{54}**    We reverse and remand to the Court of Appeals to determine whether Schultz died within the course and scope of his employment.

**{55}    IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *Schultz v. Pojoaque Tribal Police Dep't*, No. 33,372**

**APPEAL AND ERROR**
Remand
Standard of Review

**CIVIL PROCEDURE**
Estoppel
Limitation of Actions

**STATUTES**
Legislative Intent

**WORKERS COMPENSATION**

Death Benefits
Scope of Employment
Time Limitation